DAVID R. HEIST V. EVALINE HEIST.

FILED JUNE 3, 1896.   No. 6568.

1. **Divorce:** CONDONATION. Condonation is forgiveness for the past upon condition that the wrongs shall not be repeated. It is dependent upon future good conduct, and the repetition of the offense revives the wrong condoned.

2. ——: ——. Condonation of extreme cruelty may be avoided by abusive language and the use of opprobrious epithets.

3. ——: ——. Conduct of a husband towards his wife which would not alone support a decree of divorce on the ground of extreme cruelty may, nevertheless, be sufficient to avoid a condonation extended to the husband by the wife for such cruelty.

4. ——: ALIMONY. There is no fixed rule for determining what portion of the husband's estate should be decreed to his wife for alimony. The amount should be just and equitable, due regard being had for the rights of each party, the ability of the husband, the estate of the wife, and the character and situation of the parties.

ERROR from the district court of Hamilton county. Tried below before BATES, J.

*John A. Whitmore* and *Howard M. Kellogg*, for plaintiff in error.

*Jerome H. Smith* and *E. J. Hainer*, contra.

RAGAN, C.

Evaline Heist brought this suit in the district court of Hamilton county against David R. Heist, her husband, for divorce from the bonds of matrimony. She had a

decree as prayed, to reverse which David R. Heist has filed in this court a petition in error.

Mrs. Heist claimed to be entitled to a divorce from her husband because of extreme cruelty practiced by him towards her. Some of the specific acts of cruelty charged to the husband were that he had required of his wife, though a frail woman and in delicate health, the performance of heavy work in and out doors; that he had used towards his wife coarse and vile language; that on one occasion he had violently dragged her out of bed, thereby inflicting on her great pain and injury; that he had told his wife that he did not care for her; that he had an object in view in marrying her and when this object was accomplished she would leave; that on one occasion he had seized his wife while she was seated at the breakfast table and dragged her to the door of the house and told her to leave; that he had refused to permit their children, though they were able and willing, to assist her in the performance of certain household duties; that he had, in the presence of their children, called her vile and abusive names, among others, a "bitch;" that when the wife was weak and sick and in need of help to do her household work, the husband had refused to procure help for her, but harshly and cruelly told her if she could not do the work to leave. There were other acts of cruelty charged to the husband in the petition. His answer, in addition to a general denial of all the allegations of cruelty, set up the defense that in May, 1892, his wife had abandoned him without any just cause or provocation, and that in said month, at the intercession of their mutual friends, the husband and wife had met and talked over their family difficulties; that a reconciliation between them took place, and that all wrongs that the wife had suffered by reason of the husband's conduct she had then and there freely and voluntarily forgiven, and had then returned to his house and lived and cohabited with him until November, 1892, when, without any just provoca-tion, she again abandoned him. To this defense of con-

donation the wife replied that at the interview between herself and husband, in May, the husband had admitted his cruel treatment of her, had prayed her forgiveness, and solemnly promised that if she would return to his home as his wife, to henceforth treat her as a kind, true, and faithful husband, and to forbear all harsh and cruel treatment of her; that she relied on these promises of her husband, and, so relying upon them, she returned to his home and lived and cohabited with him as his wife until November, 1892. She further alleged that her husband, disregarding the promises made to her at the time of their reconciliation, resumed his said cruel and inhuman treatment of her; that after her return to his house, on the occasions of being visited by her neighbors, the husband used towards her and in the presence of the neighbors harsh and angry language; that he charged her with lying, charged her with having lied in church immediately after taking the sacrament, and threatened her with a church trial, for the offense of lying, before the church authorities, and threatened to have her expelled from the church; that during the months of October and November, 1892, he used harsh and severe language towards her; called her harsh names, among others, a "devil," and a "Christian devil," and that in the autumn of 1892 he falsely charged her with attempting to poison him.

1. The first assignment of error argued here is that the decree of the district court is not sustained by sufficient evidence. We shall not quote this evidence, nor any part of it, but it supports the allegations of the petition. It is insisted, however, that the cruelty charged to the husband was condoned by the wife early in May, 1892, and that the conduct of the husband towards the wife subsequent to that time, as shown by the evidence, is not sufficient to sustain the decree. Condonation is forgiveness for the past upon condition that the wrongs shall not be repeated; it is dependent upon future good conduct, and a repetition of the offense revives the wrong condoned.

(*Smith v. Smith*, 4 Paige Ch. [N. Y.], 432; *Wessels v. Wessels*, 28 Ill. App., 253.) Condonation is always accompanied with the implied condition that the injury shall not be repeated, and that the offending party will thereafter treat the other with conjugal kindness, or the offense will be revived. (*Davis v. Davis*, 19 Ill., 334.) In the case at bar the replication of the wife was, in substance, that early in May, 1892, she forgave her husband for the extreme cruelty previously practiced by him towards her, upon condition of, and relying upon, his promise that he would in future forbear all harsh and cruel treatment towards her and henceforth treat her as a kind and affectionate husband; that he had violated his promise so made and after her return to his house had resumed his harsh and cruel treatment of her. After the wife's return to the husband the evidence does not disclose that he ever violently laid hands upon her, but it does support the allegations of her petition that he called her vile names, accused her of lying, and accused her of having attempted to poison him. The question is whether this conduct of the husband towards the wife is sufficient to avoid the condonation. We think it is. In *Farnham v. Farnham*, 73 Ill., 497, it was held: "Condonation is forgiveness upon condition that the injury shall not be repeated, and is dependent upon future good usage and conjugal kindness." "Condonation of personal acts of violence and cruelty may be avoided by abusive language and the use of opprobrious epithets. Cruel treatment does not always consist in actual violence, and a wife, having forgiven her husband's acts of physical cruelty, may, from the subsequent use of abusive and brutal language and charges of infidelity, conclude that it will end, as on the prior occasion, in personal violence. In such case she is not bound to submit to actual violence as a condition to relief in a court of equity." In *Phillips v. Phillips*, 27 Wis., 252, it was held: "Condonation is conditional upon subsequent good conduct; and the effect of cruelty so condoned may be revived by subsequent acts of a simi-

lar nature, though slighter in degree and such as might not of themselves be sufficient ground of divorce." To the same effect see *Sewall v. Sewall*, 122 Mass., 156.

2. A second argument insisted on here is that the amount of alimony awarded the wife by the decree is excessive. The court found specially that the value of the property owned by the husband was $4,500 over and above all incumbrances thereon. The record does not show that the wife owned any property whatever. By the decree of the court the custody of the minor children was awarded to the wife, and the court also awarded her as alimony $2,250, payable in six annual installments. There is no fixed rule for determining what portion of the husband's estate should be decreed to his wife for alimony. The amount should be just and equitable, due regard being had for the rights of each party, the ability of the husband, the estate of the wife, and the character and situation of the parties. (*Cochran v. Cochran*, 42 Neb., 612, and cases there cited.) The decree of the district court is right and is in all things

AFFIRMED.