HULDA A. ANDERSON, APPELLEE, V. AXEL W. ANDERSON, APPELLANT.

FILED JUNE 13, 1911. No. 16,362.

1. Divorce: EXTREME CRUELTY: CONDONATION. Condonation is forgiveness for the past upon condition that the wrongs shall not be repeated. It is dependent upon future good conduct, and the repetition of the offense revives the wrong condoned; and condonation of extreme cruelty may be avoided by abusive language and the use of opprobrious epithets.

2. ———: ———: ———. A promise of forgiveness for past wrongs is not, alone, sufficient to constitute condonation. To have that effect such promise must be followed by a restoration of the offending party to all marital rights.

3. ———: ———: ———: Evidence. Evidence examined and referred to in the opinion *held* insufficient to establish a condonation by plaintiff of the cruelty alleged in her petition.

4. ———: Insanity: Pleading. Insanity, to be available as a defense in a divorce suit, must be pleaded.

5. ———: Extreme Cruelty: Evidence. Evidence examined and referred to in the opinion *held* sufficient to support the decree of divorce on the ground of extreme cruelty.

6. ———: Alimony: Evidence. Evidence examined and referred to in the opinion *held* sufficient to sustain the decree on the question of alimony.

Appeal from the district court for Douglas county: Lee S. Estelle, Judge. *Affirmed.*

*H. H. Bowes* and *John W. Battin,* for appellant.

*Alvin F. Johnson, contra.*

Fawcett, J.

From a decree of the district court for Douglas county, granting plaintiff a divorce and the custody of the minor child of the parties, and awarding plaintiff certain articles of household furniture and the sum of $25 a month for the support of herself and the minor child of the parties, payable monthly, from April 10, 1909, until June 6, 1925, which would be during the minority of such minor child, defendant appeals.

The errors assigned are: The insufficiency of the evidence; that the alimony is excessive; condonement by the plaintiff; and the mental irresponsibility of the defendant for the acts committed by him on which the decree of divorce is based. The evidence is voluminous. We could not set it out in any intelligible manner without extending this opinion to an unwarranted length. Moreover, we do not think a review of the evidence would serve any good purpose either to the profession or to any of the parties to this suit. It presents a series of cruel acts upon the part of defendant, which fully justified plaintiff in refusing to

continue the marriage relation. We therefore hold that the evidence of cruelty is amply sufficient to sustain the decree.

An examination of the record satisfies us that the cruelty of defendant was never condoned by plaintiff. It appears that when she first left his home she went with her babe to the Scandinavian Young Women's Christian Association Home, where she obtained a temporary shelter and home. Defendant made repeated visits to the Home for the purpose of endeavoring to induce plaintiff to return. She declined to see him. Finally, a conference was arranged between the parties in the presence of the president of the Home, the clergyman who married the parties, and another clergyman who appears to have been a half-brother of defendant. At this interview, defendant admitted his acts of cruelty, but attempted to justify them upon the ground of a weakened condition mentally and physically. This condition, such as it was, appears to have been the result of excesses both prior and subsequent to his marriage. It was concluded at this conference that the best thing would be for defendant to remain away from his wife for at least a year, and possibly two, under conditions where he could have rest and a chance for recuperation, defendant thinking that if he had such an opportunity his manhood would be restored, and he could then have his wife and child back with him and treat his wife as a man should. Plaintiff agreed that if he would go away and take treatment for at least a year until such time as his manhood should be restored and he would return home and treat her as a husband should treat his wife, she would then return to him. To this he agreed, stating that his family would furnish the necessary means. Within three hours after the interview defendant left Omaha and went to Lincoln, where some two or three days later he voluntarily entered a private sanitarium. While in the sanitarium he became ill, and, regarding his condition as critical, he wrote plaintiff a very penitent letter and begged her forgiveness for his past wrongs. She evidently was greatly

moved by this, and at once wrote him, assuring him that she had forgiven him. She immediately followed this letter up by going to Lincoln to visit him, where, as she testifies, she found him in substantially the same condition that he had been in before the separation. She was told by the physician in charge of the sanitarium that his condition was improving. She returned home. Shortly thereafter defendant wrote to her that he wanted to come home. She answered thus: "Omaha, Feb. 10, 1908. Dear Axel: I have just received your letter and must say that I am terribly grieved over the fact that you are going to leave there if you continue to get better, *because I stand by what I said in the presence of several witnesses that as long as you are not well I will not live together with you.* Now you can judge for yourself if we shall separate absolutely or you stay away until you get well which I have been advised is going to take about a year, but how soon that time would pass if we afterwards could be happy. In haste, Hulda." Notwithstanding his agreement to remain away, and in the face of this letter from his wife, he on February 28, only about two months after going to the sanitarium, returned to the home in Omaha, and desired to resume conjugal relations with his wife, which she refused, for the reason that he had not kept his agreement. He at first stated, in effect, that he had only returned home on a visit; but he kept putting off his return to Lincoln from day to day until finally he declared that he did not intend to return. He soon began repeating his ill treatment of plaintiff, finding fault with her, using profanity towards her, and finally struck her three or four times. He denies the striking. She thereupon took her child and again left him, never to return. Plaintiff never, after the first time she left home, and after the agreement which it is claimed constituted the condonation, cohabited or in any manner resumed conjugal relations with defendant. It is evident, therefore, that there never was any completed condonation; and, if there had been, defendant's subsequent conduct revived all of his former cruelty. *Heist v. Heist*, 48 Neb. 794.

As to the mental irresponsibility of defendant for the acts complained of, it is sufficient to say that insanity was not pleaded as a defense, and that in the course of the trial, when plaintiff offered to introduce testimony upon that point, defendant expressly disavowed insanity as a defense; but, if it had been pleaded, the evidence falls far short of showing any such mental condition on the part of defendant as to in the least excuse him for his acts of cruelty. He has at all times been able to transact business and has been regularly employed ever since his wife left home the second time. His testimony given upon the witness stand and his statements at the time of the conference at the Young Women's Christian Association Home all show that he fully understood and comprehended the wrongs that he had committed. It would be a farce to say that his condition was such as to excuse him for the treatment which he had accorded his wife, not only in their home, but upon the public streets.

As to the alimony, under defendant's own testimony he is now earning an average of $35 a month over and above his expenses and living, and receives $60 a month rent from his houses, making a total of $95 a month above the expense of his own living. He urges that nothing should be taken into account for the item of rent, as he claims he is indebted in an amount equal to the value of his real estate, and that it requires all of the $60 a month to pay his taxes and interest and enable him to save his property. A considerable portion of the indebtedness is due to relatives, who do not seem to be pressing him. However that may be, after paying the $25 a month for the support of his wife and child, and after securing his own living, he will still have left $70, or, after deducting water rents, $68 monthly income. We think it is not requiring too much to require him to take care of his indebtedness with that sum. The allowance of $25 a month will cease at the time his little girl becomes of age. It will require a large portion of that sum for her support. Should she die before that time, the court is open

for a motion by defendant to modify the decree. Ann. St. 1909, sec. 5339. If defendant cannot pay the sum allowed for the support of his wife and child and support himself and save his property out of his present income, we are at a loss to understand how he could save his property, maintain a home, and support his wife and child if they were to return to him, as in his answer he states it is his desire that they should do.

We think the defendant has fared well at the hands of the district court, and that he has no just cause for complaint.

AFFIRMED.