GIULIANO LAUDO, Appellant, v. APPOLLONIA LAUDO (as Amended), BELLA LAUDO, Respondent.

First Department, July 3, 1919

Divorce — defense — insanity at time adultery committed — necessity for pleading insanity as defense — burden of proof as to insanity — litigation of issue of insanity without objection — evidence.

Insanity at the time of the commission of an act of adultery is a defense to an action for a divorce based on that ground, and must be specially pleaded to be available.

The burden of proof is on the defendant to establish the defense of insanity in an action for a divorce.

Where on the trial of an action for divorce both parties recognized insanity of the defendant as the real issue in the case and proceeded accordingly, it was not reversible error to receive the testimony of a physician on that subject, although insanity was not pleaded as a defense, especially where plaintiff's counsel had already introduced proof as to defendant's rationality at the time of the commission of the adultery.

APPEAL by the plaintiff, Giuliano Laudo, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Bronx on the 18th day of April, 1919, dismissing the complaint upon the decision of the court after a trial at the Bronx Special Term.

*George B. De Luca,* for the appellant.

*Henry K. Davis,* guardian *ad litem,* for the respondent.

DOWLING, J.:

Plaintiff and defendant were married at the city of New York on May 12, 1912. There was no issue of the marriage. The parties lived together until the latter part of May, 1918, when defendant left her husband and went to visit relatives at Auburn, N. Y., where on the evening of June fourth and the morning of June 5, 1918, she committed adultery with three men. On June 12, 1918, defendant was by an order of the Supreme Court committed as an insane person to Central Islip State Hospital, Central Islip, N. Y., and she was an inmate thereof at the time of the trial of this action. The record shows that she had been in the same hospital from June 8, 1916, until September 30, 1916, when she was paroled

for a period of six months and she was finally discharged on March 30, 1917, as improved, but not cured. During that time she had very active hallucinations. On her readmission on June 12, 1918, she had a return of her hallucinations, and showed both emotional and mental deterioration.

The court has found, upon adequate and uncontradicted medical testimony, being that of a physician at the Central Islip State Hospital, who had examined and observed her on the occasion of both commitments, that at the time of the commission of the adulterous acts the defendant was mentally incapable of understanding the nature, quality, effect and consequences thereof. The testimony of the physician is that defendant is suffering from the form of mental trouble known as *dementia præcox,* which is progressive and incurable. The learned court held that judgment should be given for the defendant that " the insanity of the defendant at the time of the commission of the acts of adultery complained of is a complete defense to the action for divorce herein; * * * that the mental incapacity of the defendant at the time of the commission of the said acts, to understand the nature, quality, effect and consequences thereof, is a complete defense to the action herein and a bar to a decree in favor of the plaintiff herein; " and that defendant had sustained the burden of proof resting upon her, " to establish her insanity and mental incapacity at the time of the commission of the prohibited acts, in order to overcome the presumption of sanity and mental capacity at the time and relieve the defendant from culpability for her adulterous acts."

Upon this appeal the guardian *ad litem* concedes that the testimony upon the trial was sufficient to sustain the acts of adultery alleged in the complaint and that the other requisite elements ordinarily entitling plaintiff to recover were established. The question is squarely presented, therefore, whether the insanity of the defendant at the time of the commission of the adultery is a defense to the action.

The only case holding expressly that insanity is not such a defense is *Matchin* v. *Matchin* (6 Penn. St. 332) where Chief Justice GIBSON wrote: " But a wife's insanity, though so absolute as to have effaced from her mind the first lines of conjugal duty would not be a defense to a libel for adultery,

though it would be a defense to an indictment for it. The offense is a social, as well as a moral one; and it is agreed by the civilians to be less grievous to the sufferer, though not less immoral, when it is committed by the husband, whose transgression cannot impose a supposititious offspring on the wife, than it is when committed by the wife, whose transgression may impose such an offspring on the husband.  *  *  *

" A libel for divorce is said to partake of the nature of a criminal proceeding; but the primary intent of it is undoubtedly to keep the sources of generation pure, and when they have been corrupted, the preventive remedy is to be applied without regard to the moral responsibility of the subject of it.  *  *  *

" To say the least, adultery committed under the irresistible impulse of that morbid activity of the sexual propensity which is called *nymphomania,* or more recently *erotic mania,* would certainly be ground of divorce, though not of indictment.

" The great end of matrimony is not the comfort and convenience of the immediate parties, though these are necessarily embarked in it, but the procreation of a progeny having a legal title to maintenance by the father; and the reciprocal taking for better, for worse,  *  *  *  are important, but only modal conditions of the contract, and no more than ancillary to the principal purpose of it. The civil rights created by them may be forfeited by the misconduct of either party; but though the forfeiture can be incurred, so far as the parties themselves are concerned, only by a responsible agent, it follows not that those rights must not give way without it to public policy, and the paramount purposes of the marriage — the procreation and protection of legitimate children, the institution of families, and the creation of natural relations among mankind."

In the present case there is no question of a mere temporary (though irresistible) impulse, nor of excessive sexual desire. Defendant is suffering from a progressive, incurable malady, which destroys her sense of right and wrong, renders her irresponsible for her acts and unconscious of their consequences. The adoption of the rule laid down in the case quoted, in all its strictness, would hold such a person committing adultery subject to the civil penalty therefor by way of divorce.

But the weight of opinion and of the reasoning in the authorities (even if sometimes by way of dictum) is to the contrary. So in Bishop's New Commentaries on Marriage, Divorce and Separation (Vol. 1, § 1515) the author says: " On familiar principles, if the carnal act transpires while the party to it is insane, the crime of adultery is not committed. Consequently there is no foundation for a divorce. The Pennsylvania Court in one case, with considerable force of reasoning, contended that since the danger of a spurious issue is a main cause of allowing the divorce for adultery, and since the husband must be otherwise aggrieved by the incontinence of even an insane wife, if such a wife yields to the adulterous act under circumstances to render its repetition probable, the marriage may be dissolved. But this doctrine has found no support elsewhere. The husband would be justified in the more merciful course of restraining her." And he cites *Broadstreet* v. *Broadstreet* (7 Mass. 474); *Nichols* v. *Nichols* (31 Vt. 328); *Wray* v. *Wray* (19 Ala. 522) and *Mims* v. *Mims* (33 id. 98). In the *Broadstreet* case the defendant, as here, was proved to have been insane at the time the adultery was committed, and so to have continued, and the libel was dismissed. In the *Nichols* case the court held that insanity was a defense in an action for divorce founded on adultery, but indicated that it was no defense if committed in a lucid interval. In *Wray* v. *Wray* the court expressly held that adultery committed by a wife when insane is no ground for a divorce on the application of the husband. In a later case between the same parties the court held (33 Ala. 187) that the wife's adultery while insane was no bar to her claim to alimony. In the *Mims* case the court held that adultery committed by a wife while insane is no bar to her claim for alimony, if that be the only objection thereto.

The general rule deducible from the authorities is thus stated in 14 Cyc. 628: " The insanity of a spouse if it existed at the time of the commission of a matrimonial offense, is, within the rule excusing a matrimonial offense for want of capacity to commit, a defense to an action for divorce, whether the offense be adultery, cruelty, abandonment or desertion or non-support." As specially applicable to the question before us, Bishop says (Vol. 1, § 1507): " The rule of the criminal law that to constitute adultery, the same as

any other crime, there must be the criminal intent, prevails also in divorce law.   Nothing could be more unjust than to permit a husband to cast his wife away because of any misfortune which, without her will, might befall her; as for example where she is the victim of rape and the like.   So that * * * For adultery to justify divorce, it must be voluntary."

In *Rathbun* v. *Rathbun* (40 How. Pr. 328) the court decided that a decree of divorce would be granted to plaintiff where it appeared that the defendant committed adultery when of sound mind, although subsequently he became insane and was at the time of the action and the entry of the decree a lunatic.

In that case the court said: " It was said upon the argument taht no case in print could be found except *Mordaunt* v. *Mordaunt*,* decided the present year in England.   *Broadstreet* v. *Broadstreet* (7 Mass. 474) was cited.   It was decided in 1811, and is reported in less than ten lines.   It differs from the present case in this: in that case, the defendant was insane, at the time it was alleged the adultery was committed and so continued, 'and the insanity being proved to the satisfaction of the court, the libel was dismissed.'   No authority was cited.   The case is a clear authority for the position that insanity, at the time the act of adultery was committed, constitutes a full defense in an action for a divorce on the ground of adultery.   * * * "

The court quoted the terse saying of Coke that " a mad man is only punished by his madness," and further said: " The married relation ought not to be dissolved in case the act of adultery was committed at a time when the party committing the act was of unsound mind — insane — and the Massachusetts case (*supra*) is authority for this.   This position rests upon sound principle.   The parties to the contract take the risk of sickness, and the calamities inflicted upon them by Providence.   Insanity may have led to the commission of the act.   But when the act of adultery was committed prior to the· insanity, I am not able to see why the aggrieved party should not have redress."

It seems to me that the weight of reason is with the doctrine

---

* L. R. 2 P. 103, 109, 382.— [REP.

that insanity is a defense to an action for a divorce based on defendant's adultery. Viewing marriage as a civil contract only, with reciprocal duties, rights and obligations, the State has ordained that the parties shall mutually observe their agreement to remain true to each other, and the punishment visited on the infidelity of either is in some State jurisdictions criminal in its nature by way of making adultery a crime, and in all, the civil penalty is the termination of the marital relationship at the suit of the party aggrieved. It may be quite true, as argued in the Pennsylvania case, that the chief concern of the State is to insure the legitimacy of the offspring born to those who have entered into the contract of marriage; and yet, while that furnishes a cogent reason for ending the relationship to which the wife has proven unfaithful, it furnishes no reason why the husband should not be punished for his infidelity, nor does it seem reasonably to call for the imposition of a penalty upon one who is a victim of conditions beyond her control, and not a willing, rational actor. I believe, that the commission of the act of adultery imports the knowing, conscious, willing act of the participant therein. A wife could not permit herself to be drugged, nor take narcotics herself, nor drink to excess so as to become unconscious or have her powers of resistance destroyed, nor put herself in the way of force being exercised upon her, nor enter a situation or invite a condition which rendered resistance or escape impossible, and then seek to evade responsibility for what happened to her. But I cannot believe that the law can be justified in inflicting upon a wife the degradation of branding her as an adultress, for a misfortune which has come upon her absolutely through no fault of her own. The recitals of the brutalities committed upon women in various parts of the world during the present war have appalled humanity. Can it be possible that if such a calamity visited our State, our courts would hold that a woman violated by force and in spite of her struggles could thereafter be divorced by a husband who was so callous as to have no compassion for her sufferings? Should a wife who has been defiled by fraud or violence be deprived of her marital rights, even if she never consented to the act and in no way was responsible for it? Ought a woman who has been assailed while she was asleep, or rendered unconscious by

drugs secretly administered to her, be held guilty of adultery if a man takes advantage of her in this condition? There would appear to be but one answer to these questions, and it would apply with equal force to one who is so afflicted by an incurable mental malady as not to know what she is doing and not to know the nature and quality of her acts. I conclude, therefore, that insanity is a defense to an action for a divorce, based on the ground of adultery.

The next objection raised by the appellant is that the defense of insanity was not pleaded. There can be no doubt that as a general proposition if it is desired to raise the defense of insanity for any purpose, it must be pleaded. The rule applies to actions for a divorce, and insanity at the time of the commission of the alleged offense, if relied on as a defense, must be specially pleaded. (*Cook* v. *Cook*, 53 Barb. 180; *Anderson* v. *Anderson*, 89 Neb. 570; 131 N. W. Rep. 907.) The present case, however, is so peculiar in its facts that we think no error was committed in receiving the proof of insanity, despite the failure to plead it, and for the following reasons: The adultery was committed on June 4 and 5, 1918. The defendant was committed to the State hospital June 12, 1918, a week thereafter. This action was begun July 30, 1918. In his complaint the plaintiff averred that defendant " since about the latter part of June, 1918, * * * has been and now is an inmate of Central Islip State Hospital." The defendant appeared by her guardian *ad litem*, who verified the answer, and who set up the commitment of defendant as an insane person by order of the Supreme Court, June 12, 1918, and his appointment as her guardian *ad litem* August 30, 1918; and that as he was a stranger to the matters and things set forth in the complaint, he put the plaintiff to his proof. That plaintiff's counsel knew that the action would be contested upon the grounds of defendant's insanity at the time of the alleged adultery is established not only by his failure to claim any surprise when that issue was raised, but by his effort at the early part of his examination of the plaintiff to prove what happened between him and his wife when he first heard of her guilt, which he sought to justify " if the question of sanity comes up in this case " and also because " there may be some

duty upon me to prove by her actions and what she has done, she might have been rational at the time." Furthermore, during the course of the direct examination of Stephen Cristantiello (who called himself Costello), who testified to the acts of adultery committed with his brother and with Di Nardo, defendant's counsel called the attention of the court and of plaintiff's counsel to the contention that the defense was to be insanity as follows: " Mr. Davis: Your Honor, while this witness is on the stand — my understanding of the law in this case is this, if this woman was sane and as a fact she committed adultery, and that is proved to the Court, that does not prevent the plaintiff from getting his decree, even if she is insane; but she being now committed by this Court, it seems to me that the burden is on the plaintiff to show that she was of sound mind at the time this act was committed. Of course an insane person cannot commit adultery, and I call that to counsel's attention while the witness is on the stand, to bring out her condition by proper questions. Mr. De Luca: I will bring that out, but I do not think that is at all settled."

Accepting the suggestion, and preparing to meet the defense of insanity, plaintiff's counsel thereafter inquired of this witness whether defendant at the time acted rationally and impressed him as being rational. He was cross-examined as to why he thought her actions, described in disgusting detail, were rational. Plaintiff's counsel also examined the other witness Di Nardo as to whether defendant showed any signs of insanity or craziness. The witness Bruccoli (married to plaintiff's sister) also was examined by the court as to defendant's past mental condition, when he had testified to his efforts to locate her, after she had left her husband. He was examined further as to his opinion of her sanity by plaintiff's counsel. All of this was without objection. Every one concerned recognized the real issue to be that of whether the defendant was insane at the time she committed the acts in question. The court suggested that a physician from the State hospital should be called to show defendant's mental condition, and declined to accept a letter from the superintendent thereof as proof. Defendant's guardian thought the burden of proof of mental condition was on plaintiff, but the court properly held the burden was on defendant, saying

plaintiff had established a *prima facie* case by showing the facts, and " then the answer to that is irresponsibility." The objection that insanity had not been pleaded as a defense was not raised until the last day of the trial, when the physician was called as a witness and then it was secondary to the main objection urged, which was, that insanity in any event was no defense to an action for divorce. While recognizing that the general rule requires insanity to be pleaded as a defense, I think that on the trial both parties recognized insanity as the real issue in the case and proceeded accordingly, and that no error was committed requiring reversal in receiving the testimony of the physician on that subject, particularly as plaintiff's counsel had already introduced proof as to defendant's rationality at the time of the commission of the adultery.

The judgment appealed from is affirmed, with costs.

CLARKE, P. J., SMITH, PAGE and PHILBIN, JJ., concurred.

Judgment affirmed, with costs.