ALBERT E. WETENKAMP, APPELLEE, V. HELEN B.
WETENKAMP, APPELLANT.

299 N. W. 491

FILED AUGUST 1, 1941. No. 31108.

*Floersch & Floersch,* for appellant.

*Abrahams, McGrath & Frenzer, contra.*

Heard before PAINE, CARTER and MESSMORE, JJ., and
SPEAR and FALLOON, District Judges.

PAINE, J.

Petition for absolute divorce was filed on January 31,
1940, on the ground of extreme cruelty. Petition alleged
parties were married at Plattsmouth, Nebraska, on Sep-
tember 4, 1920. One child, Betty Jeanne, 18 years of age,
was the result of said marriage. There was a reconcilia-

tion of the parties, at the request of the defendant, and upon condition that the acts of cruelty referred to in the plaintiff's petition should not be repeated, they began living together on February 5, 1940, but notwithstanding such express conditions, and in violation thereof, plaintiff charges that defendant was guilty of renewed and repeated acts of extreme cruelty, of the same kind and character as those set out in the plaintiff's petition, and the plaintiff left her finally on March 17, 1940.

On April 6, 1940, the plaintiff filed a supplemental petition, setting out the reconciliation and the repetition of acts of cruelty of the same nature and kind as alleged in the original petition, all without excuse or provocation, and charges that by reason thereof the defendant revived the original offenses mentioned in the original petition, wherefore plaintiff renewed the prayer of the original petition.

On April 17, 1940, application was made for temporary support money, and on April 20, 1940, upon a hearing thereof, it was ordered by the court that the plaintiff pay to the defendant $65 monthly for the support of herself and the minor daughter, Betty Jeanne, and also $25 advance payment upon attorney's fee, and plaintiff was enjoined from changing the beneficiary in a life insurance policy in the sum of $2,500 upon his life, in which the wife was designated as beneficiary, and from drawing upon, or borrowing upon, or cashing in said policy until further order of the court.

On May 25, 1940, plaintiff filed an amendment to his petition, setting up that shortly after their marriage the defendant began a studied, uniform, and systematic course of cruel and inhuman conduct, consisting in nagging, faultfinding, charging that plaintiff did not earn enough money to support her, that he was no good, worthless, and a failure, although plaintiff was steadily employed and supported his wife; that the defendant continued such nagging during the night, and at times at the plaintiff's place of employment, flying into a rage and violently abusing and berating the plaintiff, struck at him, and simulated fainting spells,

all of which has been resumed and repeated since a reconciliation was effected.

Defendant filed her answer and cross-petition to the plaintiff's petition, supplemental petition and amendment thereto. She admits the marriage, and that Betty Jeanne is the issue of said marriage, and that on February 5, 1940, being shortly after the filing of the original petition, the parties became reconciled and the plaintiff returned to the defendant and cohabited with her as man and wife at their home until March 17, 1940, at which time the plaintiff left the home and has not returned, all of which defendant alleges condones all of the charges set out in plaintiff's petition.

For a cross-petition, defendant alleges that she has been a good and faithful wife, but that he has been guilty of extreme cruelty towards her; that he has carried on an affair with another woman, upon whom he has lavished his affection and earnings, in disregard of his marital duties; that plaintiff is an able-bodied man, and she believes earns about $150 a month; that defendant is without means of support, and asks that plaintiff's petition for divorce be dismissed, that she be given the custody of their minor child, and plaintiff be ordered to support their minor child, and that plaintiff be enjoined from changing the beneficiary in a policy of insurance hereinbefore described, but in said answer and cross-petition the defendant did not ask for a divorce, but only for support money.

A reply was filed, denying the allegations of the cross-petition. Trial was had, and a decree was entered, finding that the allegations of the petition, supplemental petition and amendment thereto are true; that the plaintiff has at all times conducted himself towards the defendant as a faithful and devoted husband, but that the wife, disregarding her marital duties, and without any excuse or provocation therefor, has been guilty of repeated acts of cruelty towards the defendant, of such a kind and character as to materially impair his peace of mind, his physical health, and which destroyed the legitimate objects of matrimony.

The court finds that, shortly after the filing of the original petition, the plaintiff returned to the defendant, upon condition that said acts of cruelty should not be repeated, and that defendant should thereafter adopt a kind and considerate attitude toward the plaintiff; that notwithstanding the express conditions, the defendant, in violation thereof, has been guilty of renewed and repeated acts of extreme cruelty, and that by reason thereof the defendant revived the original offenses complained of by plaintiff.

The court finds that the one child, Betty Jeanne, the issue of the marriage, was 19 years old at the date of the decree, and grants her custody to the defendant, who is a suitable and proper person.

The court finds that plaintiff is entitled to an absolute decree of divorce, but awards $1,500 as permanent alimony to the defendant, to be paid in equal monthly payments of $50 each until the whole sum is fully paid. Defendant's attorneys are allowed $100 in addition to the $25 heretofore awarded them, and defendant is allowed her court costs, with the exception of witness fees. The plaintiff is enjoined from changing the beneficiary in the life insurance policy of $2,500 heretofore mentioned, or from borrowing upon it, or cashing it in, until the sum of $1,500 permanent alimony is paid in full, whereupon the injunction in regard to said life insurance policy shall terminate, and plaintiff shall have every right and privilege under said policy thereafter.

The decree further provided that the household goods and furnishings be awarded to the defendant, except the personal effects of the plaintiff, and that he is declared to be the owner of the 1938 Ford automobile, and, finally, that the cross-petition of the defendant be dismissed.

Motion for new trial was duly filed by the defendant, and the same was overruled, and the defendant appeals.

As grounds relied upon for a reversal of this decree, the defendant charges that marital relations should continue so long as both parties live, and such relations should not

be dissolved except upon adequate statutory grounds. Defendant charges that condonation of the defendant's wrong, which was not subsequently repeated, bars the husband from obtaining a divorce on said grounds; that where plaintiff charges certain acts of cruelty committed against him, and thereafter freely cohabits with his wife, he will be held to have condoned such offenses, as such condonation is forgiveness for the past upon condition that the wrong shall not be repeated.

The evidence of plaintiff is that for the first five years of their marriage they got along fairly well, but that in 1925 he caught the defendant in their own home sitting on the lap of a man who was a boarder and a roomer at their house, and he compelled him to leave, and thereafter the defendant treated him cruelly; that she would curse him, calling him names which should not be printed in this opinion, she would go into fainting spells, claiming she was going to die, accuse him of misconduct with other women, she wanted to fight him, would grab the newspaper out of his hand, pull the covers off his bed, try to beat him, and threatened to kill him; that when he would try to set her down she would scream and yell, claw him, break dishes; that she told him she did not know why she ever married him, that he was so low that he was unfit to live with. One time she ran to the bathroom and got a bottle of carbolic acid and told him she would drink it and "end it all." Plaintiff claimed that most of their arguments were started by her; that all this made him extremely nervous and he developed a bad case of stomach trouble. He said that five or six weeks after he filed his petition for divorce he went back to living with his wife, as his mother acted as "kind of an arbitrator," and wanted them to go to living together again, and he agreed to try it again for 30 days and see if conditions would improve.

When he was packing his tools out in the garage to leave on March 17, 1940, his daughter came out and tried to get him to stay. He told his wife he was going to leave, and kissed her before he left. He testified that his earnings

would hardly ever go over $150. He sometimes worked on cars at home nights, and if his wife would ask him to put on screens, or mow the lawn, and he did not get it done that night or the first Sunday, she would start nagging. The plaintiff is shop foreman at the Russell Motor Company, and takes care of all service work that comes in, or sees that the mechanics take care of the work; his job is supervisory, and he stays at work until everything in the shop is cleaned up.

The defendant testified that she lives at 2879 Camden avenue, Omaha. When they lived on Spencer street her brother-in-law and two sisters boarded with them, and then later on a young man that Elmer brought to the home boarded with them. She would ask plaintiff to put up storm windows, or take down the screens, or mow the lawn, and he would not do it right away, and she would have to ask him two or three times, and he would call that nagging. When she would want him to sit down and talk over finances, he would say, "Well, there you go nagging again." She said she had been very much upset over some of Elmer's actions, and reprimanded him, but she would not say she cursed him. She denied that she attempted suicide, or kicked him in the head. The first time she became suspicious of him was a year ago last August when her daughter was in the hospital, and she became aware that he was going out a little more than he should, and sometimes he would stay out until 2 o'clock. The day before Christmas last year (1939) when they were in Peoria, Illinois, for Christmas he wired some woman in Omaha flowers.

Mrs. Albert Wetenkamp, the mother of plaintiff, testified that she lives on a farm near Plattsmouth. She said she was sorry to say that Helen is of a high-strung, nervous disposition, and inclined to nag more than she felt she should; was always reproving him in an unkind way. One Christmas morning, when she was visiting at their home, defendant nagged Elmer for two or three hours because he did not go to church that morning. The defendant is a Catholic, and the plaintiff became a Catholic when they

were married, or shortly before. After the petition for divorce was filed, she called her son and told him she thought they ought to try and live together and try to adjust things. She testified she did everything in her power to bring them back together, because she does not believe in separations.

The bill of exceptions is long, and contains the evidence of many friends and neighbors, and to review this cumulative evidence would extend this opinion to an undue length.

It is the defendant's contention that the condonation of the wife's wrongs not subsequently repeated will bar the husband from obtaining a divorce.

This case involves a study of the subject of condonation, which is forgiveness, express or implied, for a breach of marital duty, with the implied condition that the offense shall not be repeated. Forgiveness sufficient for condonation is complete if there is a voluntary resumption of the marital relations. *Massie v. Massie*, 202 Ia. 1311, 210 N. W. 431; *Anderson v. Anderson*, 89 Neb. 570, 131 N. W. 907. A full disclosure of all previous misconduct is not necessary for condonation. If condonation occurs, and the offense is not repeated, it deprives one thereafter of seeking a divorce for the condoned offense, for it operates as a complete bar to a suit for divorce upon the same ground. *Griffith v. Griffith*, 77 Neb. 180, 108 N. W. 981. Ordinarily, condonation of a known offense does not warrant an inference that all offenses have been forgiven, and does not bar divorce for an offense not known to the injured party at the time of condonation. See 17 Am. Jur. 250, sec. 198.

"Condonation is forgiveness for the past upon condition that the wrongs shall not be repeated. It is dependent upon future good conduct, and the repetition of the offense revives the wrong condoned; and condonation of extreme cruelty may be avoided by abusive language and the use of opprobrious epithets." *Anderson v. Anderson*, 89 Neb. 570, 131 N. W. 907. See, also, *Heist v. Heist*, 48 Neb. 794, 67 N. W. 790.

The rule that subsequent ill treatment is a breach of the

condonation of cruelty, and revives the offense, has been applied in the case of *Riddick v. Riddick*, 112 Neb. 813, 201 N. W. 557. Many cases on this point may be found in 98 A. L. R. 1359, in the annotation on the revival of condoned cruelty.

It has been held that voluntary cohabitation after continuing acts of cruelty cannot be considered in the same sense in which it would be after an act of adultery, for the effort to endure unkind treatment as long as possible is commendable, but the repetition of the same cruel and harsh conduct, showing a resumption of the former course of conduct, thereby revokes condonation, and the original cause of divorce is revived. 17 Am. Jur. 257, sec. 210; *Mosher v. Mosher*, 16 N. Dak. 269, 113 N. W. 99, 12 L. R. A. n. s. 820, 125 Am. St. Rep. 654; *McNamara v. McNamara*, 93 Neb. 190, 139 N. W. 1045; *Hartshorn v. Hartshorn*, 104 Neb. 561, 178 N. W. 186; *De Vore v. De Vore*, 104 Neb. 702, 178 N. W. 621.

In the case at bar, an experienced trial judge saw all of the witnesses, and carefully listened to their testimony, and finally reached the conclusion that an absolute divorce to the husband was a preferable solution of the difficulties.

The trial court is vested with sound discretion in determining whether a divorce from bed and board, or an absolute divorce, shall be granted, and in a majority of the cases an absolute divorce is to be preferred. *Hild v. Hild*, 135 Neb. 896, 284 N. W. 730; *Swanson v. Swanson*, 137 Neb. 699, 290 N. W. 908; *Phillips v. Phillips*, 135 Neb. 313, 281 N. W. 22; *Sutherland v. Sutherland*, 132 Neb. 558, 272 N. W. 549.

The wife was granted $1,500 alimony, to be paid in monthly instalments guaranteed by a lien on a life insurance policy, and this was proper under the evidence, for "Even though the petition of the wife is denied, and an absolute divorce granted the husband, yet in such a case the wife may be granted reasonable alimony, under the restrictions of section 42-318, Comp. St. 1929." *Phillips v. Phillips, supra*.

In October, 1940, motion for suit money *pendente lite* and for temporary injunction was filed by the defendant's attorneys and argued, and this court granted the following items to be paid by the plaintiff: $20 for defendant's filing fee in this court; $5 for defendant's appeal bond; $5.55, cost of transcript; not to exceed $40 for defendant's brief; not to exceed $100 for the bill of exceptions; which altogether amounted to the sum of $170.55, or so much thereof as might be necessary. In addition thereto, the defendant was allowed the sum of $40 a month as temporary support money for herself.

Because the original decree of the district court is hereby affirmed, which granted to the defendant $50 a month until the sum of $1,500 was paid, payments to begin with the date of the decree, which was September 20, 1940, it is hereby ordered that the temporary payments of $40 a month heretofore made by the plaintiff be allowed as a credit upon the alimony granted in the original decree of $1,500. It is further ordered that attorneys for the defendant be granted $100 fee in this court.

AFFIRMED.