JAMES H. GIBSON, APPELLEE, V. ELSIE MARIE GIBSON,
APPELLANT.

11 N. W. (2d) 760

FILED NOVEMBER 12, 1943. No. 31572.

*Kennedy, Holland, DeLacy & Svoboda* and *L. J. Tierney,*
for appellant.

*J. J. Harrington, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE,
CHAPPELL and WENKE, JJ.

PAINE, J.

This was an action for divorce, in which a decree was
granted to the plaintiff husband upon his petition. The
wife was denied a decree for separate maintenance on her
cross-petition, and appeals to this court.

On December 15, 1941, the plaintiff, James H. Gibson,
filed petition for divorce, alleging that he had lived in Holt
county all his life; that he is a member of the board of
county supervisors; that the defendant is cross and unrea-
sonable and cruel with his two daughters by his first mar-
riage, and has slapped them and abused them. He further
charges that the defendant is insanely jealous of him, which
jealousy has no foundation; that he has lost all love and af-
fection for her, and cannot live with her as his wife. He
asks for an absolute divorce.

On January 19, 1942, the defendant filed answer and
cross-petition, denying the allegations of the petition in the
main, alleging that they were married November 11, 1939,
that he erected a new home in Chambers at a cost of $3,-
500. Defendant alleges that she brought with her to Cham-

bers $1,285, which the plaintiff used; that his conduct with another woman was indiscreet; that he refused to take his wife with him on picnics of courthouse employees and other social occasions, and never took her to the courthouse but once; that he insisted that she get up at 4:30 in the morning and begin work; that he mistreated her at the time of the birth of their son; that one time he struck her and threw her to the floor; that he has a large income, and defendant prays that she be awarded separate support and maintenance for the support of herself and their child.

The evidence discloses these facts: Each of the parties was about 40 years old at the time of their marriage. The plaintiff had two daughters by his former marriage, who were about six and ten years of age, and his first wife died in 1936.

The defendant had been employed for 18 years by the Nebraska Culvert & Pipe Company, of Wahoo, Nebraska, earning $125 a month plus a bonus. The parties were married November 11, 1939, in Dodge county, but after a few days it was agreed between them that she should continue to work a few months there at Wahoo until a certain important job was completed by her company. The defendant had saved from her own earnings during these years about $2,000. She used some $700 of this to buy furniture, which was put in their new home at Chambers, and testifies that she took $1,285 in cash to Chambers, of which $1,165 was deposited in her husband's account on July 6, 1940, in the Chambers State Bank, and within a few months he had checked out all of this money and applied it on the bills for erecting the home and in his business of a road contractor, except possibly $200, which she had drawn out for expenses.

The issue of this marriage was a boy, born September 27, 1941, who was continuously sickly, which may have been partly due to a hernia in his side. Serious complaint is made by the defendant of the way her husband treated her during her pregnancy. He objected to her seeing a doctor but twice before the baby came. A short time before the birth of the baby her hands swelled up and were sore,

but the husband insisted upon her milking the cow and doing the work, and while the doctor prescribed two kinds of medicine which were necessary for her condition the plaintiff refused to buy them for her. She thereupon instructed her parents at Omaha to sell an old typewriter which she owned and send her the money, with which she was able to buy the necessary medicine. The baby was born at the home, with no nurse employed, and on the fifth day thereafter, upon the plaintiff's insistence, she resumed her work.

During the two years and one month of their marriage the plaintiff prospered financially, for when they were married he had but little property. He engaged in the business of road-making for the county, for various townships, and for cemetery associations, outside of his work as a county supervisor. The summary of the disputed evidence indicates that the home cost about $3,500, upon which there is an indebtedness of either $300 or $600; that also during their marriage he purchased a 1940 Buick automobile for $1,095, which is worth more than $500; that he purchased a second-hand caterpillar Diesel tractor for $2,500, against which there was a mortgage of $600, and bought a second-hand elevating grader for $600, also a blade grader for $400, a refrigerator for $100, a sewing machine for $65, as well as a washing machine, milk separator, and a radio, the values of which are not shown in the evidence. The evidence discloses that, when a heavy tractor like this is worked hard in sand in road work, it deteriorates very rapidly, perhaps 10 per cent. a month, but the evidence shows that there were $250 repairs on the tractor, and the evidence is that it is worth $2,000. There were also repairs made of $411.04 on the elevating grader, and of $224 on the blade grader, and the testimony of a machinery salesman is that, by these constant and expensive repairs, their high depreciation can be offset to a great extent.

The testimony of the principals in the case as to the value of plaintiff's holdings cannot be reconciled, the plaintiff contending that he is worth practically nothing, and the defendant contending that he had all of the property as set

out, with other household appliances not listed, which all reaches a value of a good many thousand dollars. The defendant, in moving to Omaha and leaving the plaintiff, took with her the furniture which she had bought and installed in the house, but there can be no doubt that she contributed $1,285, which was used up in paying bills on the property accumulated after they were married, and the evidence indicates that plaintiff was making around $226 a month. This is proved by the copy of his income tax report for 1941, showing that his salary and expenses as county supervisor was $1,076.60, and he shows in this income tax return that he received $5,095 that year for road work, and deducting his necessary expenses of $2,956.95 left a net profit on his road contract work of $2,138.05, and taking out his other legal deductions left a net income of $2,713.32 for that year.

The defendant devoted her entire time to chores, housework, and the upbringing of the two little girls by the first marriage. She honestly endeavored to train them to say their prayers and to conduct themselves with better manners than they did before she came into the home. There is no doubt but that, when they were wilful and disobedient, she punished them, but she claims there was justification for this action on her part.

Their baby boy was continually sick and cried night and day, doubtless because of the hernia with which he was afflicted from birth, and although so sickly the plaintiff refused to allow an operation or pay doctor bills, therefore the defendant was justified in taking this boy to Omaha on December 19, 1941, and having him operated upon by Dr. Shramek at St. Joseph's Hospital. Since the above date the father has never been to see his son. The hospital and incidental bills amounted to $117.30, which the mother has paid, and Dr. Shramek's bill was $130, which she has not yet been able to pay. She took the boy to the home of her parents. Her father is nearly 70 years old and unable to work, and her mother has been an invalid in a wheel chair for 18 years. Her sister is sickly, but works as she is able as a maid, and therefore her parents are unable to do any-

thing for defendant or her baby at all, so she will not be able to leave him and find a position for several years. Neither party objects to the allowance of $20 a month made for the child's support, which appears to be adequate at the present time, and is affirmed.

With this review of the evidence, we will now consider the assignments of error, which charge that the judgment, finding and decree are not sustained by sufficient evidence, and are contrary to the evidence and the law; that the court erred in granting plaintiff an absolute divorce, and particularly that the court erred in the inadequate and insufficient alimony allowed the defendant.

Our court has held: "This court will not require a party in a divorce action, who has prayed for a divorce from bed and board only, to accept an absolute divorce when she does not request such a decree, where the other party is not entitled to relief." *Yost v. Yost, ante,* p. 80, 8 N. W. (2d) 686.

In the case at bar, doubtless the prayer of either the petition for a divorce, or of the cross-petition for separate maintenance, would have been found to be supported by sufficient evidence, for the conditions existing between the parties were intolerable and unbearable. Frequently a limited divorce proves inadequate, and several decisions plainly illustrate the unfortunate difficulties following separate maintenance decrees: *Stocker v. Stocker,* 112 Neb. 201, 199 N. W. 23; *Mann v. Mann,* 124 Neb. 639, 247 N. W. 602; *McKnight v. McKnight,* 5 Neb. (Unof.) 260, 98 N. W. 62; *Sutherland v. Sutherland,* 132 Neb. 558, 272 N. W. 549. See, also, annotation, 138 A. L. R. 361.

A study of the evidence in the case at bar discloses such an unfortunate marital condition existing between the parties as absolutely prevents a reconcilement, and therefore the action of the trial court in granting the plaintiff an absolute divorce is supported by the evidence. It has been held by this court that the trial court is vested with a sound discretion in determining whether a limited divorce from bed and board or an absolute divorce shall be granted, and

we have said that in the majority of cases an absolute divorce is to be preferred. See *Wetenkamp v. Wetenkamp,* 140 Neb. 392, 299 N. W. 491.

We now come to defendant's assignment of error in the allowance of alimony. Our statute provides that, except in the one case where the divorce has been granted from the wife on the ground of adultery, if it is necessary for her support and the maintenance of herself and the issue of the marriage awarded to her, the court may decree the payment of such an amount of alimony out of the estate of the husband as it shall deem just and reasonable, having regard to the ability of the husband, the character and situation of the parties, and all other circumstances. Comp. St. 1929, sec. 42-318.

In the case at bar, the parties were mature at the time of their marriage, and the evidence shows that she contributed to the accumulation of their property by relieving him entirely of the management of his two little girls by his former marriage, and that she took care of the cow and chickens, and performed all of the household duties, giving her entire time thereto. In addition to that, there is no doubt but that her contribution of $1,285 in cash at the beginning of their marriage was a much greater amount than the husband had at that time.

In the case of *Phillips v. Phillips,* 135 Neb. 313, 281 N. W. 22, many similar cases of marriages of short duration are reviewed, and the amount of alimony given in each case is set out, and therefore such cases will not be discussed again in this opinion.

Considering the contribution of the wife in cash at the time of the marriage, and the fact that they accumulated all of the property set out herein by their joint efforts, and that he has an earning capacity of over $225 a month, and that she will be unable to seek employment for some years because of the necessity of giving practically her entire time to the nurture and care of the little son, who has always been sickly, it is our opinion that the defendant is entitled to alimony in the sum of $3,000, payable in monthly

instalments of $50 a month, with proper credits for all payments on alimony heretofore made. In this respect the decree of the trial court is modified, but in all other respects it is affirmed. The defendant wife is also granted an attorney's fee in this court in the sum of $100.

AFFIRMED AS MODIFIED.

YEAGER, J., participating on briefs.