ETHEL LOUISE HODGES, APPELLEE, v. GLEN W. HODGES, APPELLANT.

47 N. W. 2d 361

Filed April 12, 1951. No. 32913.

Dwight Griffiths and Robert S. Finn, for appellant.

Armstrong & McKnight, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff brought this action seeking an absolute divorce from defendant for specifically alleged extreme cruelty by personal violence and other means. Defendant filed an answer and cross-petition, denying generally and seeking an absolute divorce from plaintiff upon similarly alleged grounds.

After hearing upon and disposition of several preliminary motions and applications, the case was tried upon

its merits for three days, and the parties rested. Thereafter on June 6, 1950, upon application and hearing, defendant was permitted to withdraw his rest, and on June 20, 1950, both parties adduced additional evidence.

The court then rendered its decision, finding and adjudging the issues generally for plaintiff upon her petition, and dismissing defendant's cross-petition. The decree granted plaintiff an absolute divorce, and gave her the household goods and effects plus $300 permanent alimony; it gave her, as a fit and proper person, the care, custody, and control of their four-year-old daughter, and ordered defendant to pay plaintiff $50 a month as child support. It gave defendant the right to visit the child at reasonable times and places, and the right to have her custody on the first and third Sundays of each month. It gave defendant all other property owned by the parties, including a trailer house, possession of which was given plaintiff until September 1, 1950. All costs were taxed to defendant, including an allowance of $250 attorneys' fees for plaintiff's attorneys, in addition to $90 theretofore allowed as temporary attorneys' fees and suit money.

Defendant's motion for new trial was overruled, and he appealed, assigning substantially: (1) That the judgment was not sustained by the evidence but was contrary thereto and contrary to law, primarily because there was insufficient corroboration of plaintiff's testimony or because in any event defendant's alleged acts of cruelty had been condoned; (2) that the trial court erred in refusing to grant defendant a divorce or give him a new trial for newly discovered evidence; (3) erred in limiting defendant's right to have custody of the child only on the first and third Sundays of each month; and (4) that the allowances for alimony, child support, suit money, and attorneys' fees were excessive. We conclude that the assignments should not be sustained.

Divorce cases are triable de novo on appeal to this

court in conformity with section 25-1925, R. R. S. 1943, subject, however, to the rule that when the evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than the opposite. Brown v. Brown, 146 Neb. 908, 22 N. W. 2d 148; Green v. Green, 148 Neb. 19, 26 N. W. 2d 299.

As late as Stefan v. Stefan, 152 Neb. 23, 39 N. W. 2d 918, this court reaffirmed the rule that: "In an action for divorce if the evidence is principally oral and is in irreconcilable conflict, and the determination of the issues depends upon the reliability of the respective witnesses, the conclusion of the trial court as to such reliability will be carefully regarded by this court on a review." See, also, Trevett v. Trevett, 151 Neb. 517, 38 N. W. 2d 332.

Also, the rule is that: "It is impossible to lay down any general rule as to the degree of corroboration required in a divorce action, as each case must be decided on its own facts and circumstances." Johnsen v. Johnsen, 144 Neb. 208, 12 N. W. 2d 837. See, also, Brown v. Brown, *supra;* Green v. Green, *supra.*

This court recently held that: "Where condonation is relied upon as a defense, it should be pleaded. Where a repetition of the wrong condoned is relied upon, it should be pleaded.

"The absence of a plea of condonation does not prevent the court from considering that question." Wright v. Wright, 153 Neb. 18, 43 N. W. 2d 424.

As early as Heist v. Heist, 48 Neb. 794, 67 N. W. 790, it was held that: "Condonation is forgiveness for the past upon condition that the wrongs shall not be repeated. It is dependent upon future good conduct, and the repetition of the offense revives the wrong condoned.

"Condonation of extreme cruelty may be avoided by abusive language and the use of opprobrious epithets.

"Conduct of a husband towards his wife which would not alone support a decree of divorce on the ground of extreme cruelty may, nevertheless, be sufficient to avoid a condonation extended to the husband by the wife for such cruelty."

In that connection it was held in Wetenkamp v. Wetenkamp, 140 Neb. 392, 299 N. W. 491, that: "Condonation may be applied to acts of cruelty, but it stands upon a somewhat different basis than cohabitation after knowledge of adultery, for cruelty as a ground of divorce is a continuing course of conduct which grievously wounds the mental feelings and destroys the peace of mind so that it nullifies the legitimate ends of matrimony. The effort to endure unkind treatment as long as possible is commendable, but the repetition of the same cruel and harsh conduct, showing a resumption of the former course of conduct, thereby revokes condonation, and the original cause of divorce is revived."

Also, as held in Trevett v. Trevett, *supra*: "One party to the marriage may condone the cruelty of the other but one claiming condonation must establish it by clear and satisfactory proof."

In the light of the foregoing rules, we have examined the evidence. It is voluminous and of necessity will be only briefly summarized.

The following facts are without dispute. The parties met at Chanute Field, Illinois, while defendant was in the army and plaintiff was employed at the post exchange. They were married at Devine, Texas, on April 30, 1944. Thereafter they lived together at various army bases until defendant went overseas in June 1945. Plaintiff, then pregnant, went to live with defendant's parents near Julian. Their daughter was born on February 11, 1946, prior to defendant's return from overseas on February 26, 1946. On leaving the hospital after birth of the child, plaintiff went to live

with defendant's sister and brother-in-law on a farm near Auburn. A short time after defendant's return they purchased a trailer house in which they lived. It was first parked on a farm of defendant's parents west of Julian, then in Julian back of a garage operated by defendant, then in a cabin camp in Auburn. In April 1949 they purchased a new trailer house in which they lived until the separation, and this action was filed on December 29, 1949. Plaintiff's brother, 16 years old at the time of trial, lived with them except from July 1946 to August 1947. All other material questions of fact were generally in irreconcilable conflict.

Plaintiff testified that at various times and places during the last two years before separation, defendant angrily struck her with his fist or open hand, leaving marks of such assaults upon her eyes and face, and on one occasion struck her with such force as to knock her to the floor, stunned or unconscious for a few moments, from which she thereafter suffered headaches and dizziness. She testified that three or four times a week defendant would not come home until midnight or as late as 4 a. m., and then would sleep late, even until noon. He refused any explanation, except that it was none of plaintiff's business, and they quarreled about it, disturbing their neighbors late at night. Defendant threatened plaintiff with physical violence on many occasions; told her to shut her mouth or he would shut it for her; to shut up or he would knock her teeth out; to be quiet or he would hit her. Defendant told her many times that he wanted a divorce and was tired of living with her. The record discloses that such testimony was amply corroborated by plaintiff's brother, who was not unfriendly with defendant, and by neighbors, who testified for plaintiff. In that situation, plaintiff was entitled to a divorce unless barred by condonation.

In that regard, plaintiff testified that about two weeks before their separation, defendant slapped her upon two

occasions, and told her: " 'If you don't get a divorce I will, I simply can't stand you any more.' "  As stated by plaintiff's brother, defendant said:  "He wanted to know what she would take to settle for a divorce, that he was getting tired of living with her.  He told her lots of times before that that he wanted a divorce.  When we went back to Illinois on Labor Day he also told my grandmother that they were getting a divorce."

In the light of the foregoing we conclude also that plaintiff's action was not barred by condonation.  In other words, if any acts of extreme cruelty aforesaid were ever condoned such condonation was revoked, and they were subsequently revived by defendant's resumption of his former conduct.

The record further discloses that in August 1949, when defendant was recuperating from an illness and not yet employed full time, plaintiff obtained employment in a reputable cafe because they needed the money for their support, to which she subsequently contributed.  In such employment plaintiff made from $45 to $47 a week, working at first from 2 p. m. until 10 p. m., and later from 11 a. m. until 8 p. m., which necessitated leaving their daughter with a reputable and proper woman employed by plaintiff for several hours during the afternoon and evening.  It was a mile and one-half from plaintiff's trailer house to the place where the child was left, thence to plaintiff's place of employment.  Although defendant was a parts man and auto mechanic with more than one, and sometimes as many as four cars of his own, he seldom took plaintiff to work and seldom if ever came to get her at night as he should have done.  Rather, upon such occasions she took a taxi at her own expense or rode with others, as did other employees at the place where she worked. Sometimes she rode with employees in their cars and at other times she rode with others who were kind enough to furnish transportation.  On several occasions a reputable unmarried businessman, who was a cus-

tomer at the place where plaintiff worked, took plaintiff and other employees home in his car. Upon a few occasions he got plaintiff's child, brought her to the cafe, and took plaintiff and the child home when other employees were not with them. Defendant had knowledge of the foregoing facts, but made little if any protest about them. This same man gave plaintiff a gift at Christmas time, and upon two other holiday occasions, as he likewise did others employed at the place where plaintiff worked. There was no evidence from which it could be concluded that plaintiff had in any manner been unfaithful to her marriage vows.

The foregoing situation was the entire basis of defendant's allegations and contentions that plaintiff had been unduly friendly toward and intimate and familiar with a named man and with other men whose names the defendant did not know, thus causing him great embarrassment and humiliation.

The evidence of a single witness that plaintiff was seen with the named man in a theatre in Nebraska City on April 13, 1950, and the evidence of defendant and two of his relatives that they saw plaintiff with him late at night on February 22, 1950, was entirely refuted not only by evidence adduced by defendant with relation thereto, but also other competent evidence given by numerous reputable witnesses who testified for plaintiff.

We conclude, as the trial court must have done, that the serious charges made against the plaintiff's character were without any substantial foundation and that plaintiff without doubt was not only a good mother and housekeeper but also a woman with character.

In support of his cross-petition, defendant testified that upon five occasions plaintiff became angry and assaulted him. None of these acts were corroborated in any manner save one, and if that event occurred in the manner described by defendant, it was thereafter fully condoned. As a matter of fact, in explanation of such other events, defendant himself admitted that he once slap-

ped plaintiff in the face with the back of his hand, "to quiet her down, and it did just that." Upon other occasions he said: "I restrained her with a slap in the face, and that slap didn't restrain her and I gave her another one * * * sharp * * * stinging * * *" with the "back of my hand." Upon the occasion having any corroboration whatever, he said that plaintiff "bit me in the back * * * completely through the leather jacket," whereupon he "opened the trailer door and pushed her out of the trailer." We conclude that the trial court was right when it refused to grant defendant a divorce.

Defendant's contention that the trial court erred in refusing to grant a new trial for newly discovered evidence, with relation to events allegedly occurring after the trial and rendition of the decree, has no merit. The applicable rule, as stated in Morrill County v. Bliss, 125 Neb. 573, 251 N. W. 106, is that: " 'A new trial will not be granted upon the ground of newly discovered evidence, unless it is made to appear that such evidence, if it had been offered and admitted on the trial, would probably have produced a different result.' Dickinson v. Aldrich, 79 Neb. 198.

"The application for a new trial on the ground of newly discovered evidence is addressed to the sound judicial discretion of the trial court, and its action thereon will not be overruled unless a clear abuse of discretion is shown."

With regard to the care, custody, and control of their small child, it was said in Gorsuch v. Gorsuch, opinion on motion for rehearing, 143 Neb. 578, 11 N. W. 2d 456: "The proper rule in a divorce case, where the custody of minor children is involved, is that the custody of the child is to be determined by the best interests of the child, with due regard for the superior rights of fit, proper, and suitable parents."

In that connection, the care, custody, and control of a small child, particularly a little girl, is almost uniformly awarded to the mother, if she is a fit and proper

person. As held in Bath v. Bath, 150 Neb. 591, 35 N. W. 2d 509: "In awarding the custody of minor children, the court looks * * * to the best interests of such children, and those of tender age are usually awarded to the mother. Other considerations being equal, it is usual to award the custody of children to the innocent spouse.

"Custody of minor children awarded their mother in a divorce action will not be disturbed * * * unless it is shown that the mother is an unfit person to have their custody, or that their best interests require such action."

We conclude, as the trial court did, that the mother was a fit and proper person to have the custody, care, and control of the child and that defendant was fortunate in that the court conceded him the right to have her custody on the first and third Sundays of each month. Whether or not defendant was otherwise a fit and proper person to have her custody we deem it unnecessary to decide.

We come finally to the question of whether or not the allowances were excessive. The record discloses that defendant was capable of earning $250 or more a month. He was receiving in addition a veteran's pension. He owned a garage business at Julian, with merchandise and equipment concededly worth from $800 to $900. He had an equity of about $1,200 in a new trailer. Such property was accumulated by the parties during the marriage and plaintiff contributed thereto. An allowance to plaintiff of the household goods plus $300 as permanent alimony and $50 a month child support, with all other property awarded to defendant, was more than fair and just to him. There were numerous hearings and a long trial on the merits. Defendant took several depositions before and during the trial. In the light of the record, the allowances for attorneys' fees and expense money were not excessive.

For the reasons heretofore stated, we conclude that the

judgment of the trial court should be and hereby is affirmed at defendant's costs, including an allowance of $250 to plaintiff's attorneys for their services in this court.

· AFFIRMED.

YEAGER, J., participating on briefs.