HELEN WAKEFIELD, APPELLEE, V. RALPH W. WAKEFIELD,
APPELLANT.
61 N. W. 2d 208

Filed November 20, 1953.   No. 33364.

*George Evens,* for appellant.

*William N. Jamieson,* for appellee.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Helen Wakefield filed her petition seeking a decree of separate maintenance from defendant Ralph W. Wakefield, alleging extreme cruelty and nonsupport as grounds therefor. Without objection plaintiff was subsequently permitted to amend her petition to pray for an absolute divorce. Contrary to defendant's contention, her petition did not rely upon desertion as a ground for relief. In response to defendant's motion to make plaintiff's original petition more definite and certain, she did set forth at length in her amended petition two occasions when defendant left her and the children several months without any means of support, simply as part of a chain of circumstances to sustain her claim of continuous extreme cruelty and nonsupport. Defendant filed an answer and cross-petition, denying generally, and specifically alleging condonation, and seeking an absolute divorce upon the grounds of extreme cruelty by plaintiff.

Five children were born during the marriage, to wit: One boy of age, self-supporting, and not here involved; one girl 18 years old; one girl 17 years old; one boy 15 years old; and one boy 10 years old. Plaintiff sought

custody of the minor children together with a proper allowance for the support of herself and the children. On the other hand, defendant sought custody of the two younger boys and an alleged equitable division of their home, which always stood in the name of plaintiff.

After hearing upon the merits, a decree was rendered finding generally against defendant and in favor of plaintiff, granting her an absolute divorce and custody of the minor children, with right of visitation by defendant, together with an allowance of $20 per week for their support until further order of the court. In that connection, at time of trial defendant concededly had failed for about 6 weeks to pay anything upon a temporary allowance of $20 per week for support of the children and he had not paid anything upon a temporary allowance of $75 attorney's fee. The decree also awarded plaintiff the home, more particularly described in the decree, which was located at 6047 South 40th Street in Omaha, and quieted the absolute title thereto in plaintiff, together with all the household goods, furniture, and personal property therein, worth approximately $500. All costs, including an additional sum of $175 as attorney's fee, were taxed to defendant. His motion for new trial was overruled, and he appealed, assigning substantially that the trial court erred: (1) In awarding plaintiff a decree of divorce and custody of the children instead of awarding a decree to defendant with custody of the two younger boys; and (2) in awarding plaintiff absolute title to the real estate together with $20 per week as child support instead of making an equitable distribution of the real estate between the parties. We conclude that the assignments have no merit.

It is generally the rule that: "Divorce cases are tried de novo on appeal to this court, subject to the rule that when credible evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of

testifying and must have accepted one version of the facts rather than the opposite." Killip v. Killip, 156 Neb. 573, 57 N. W. 2d 147. Such case also held: "Custody of a child of tender years should be awarded the mother unless it is shown that she is unsuitable or unfit to have such custody or through some peculiar circumstances is unable to furnish a good home.

"Extreme cruelty may consist of personal injury or physical violence, or it may be acts or omissions of such character as to destroy the peace of mind or impair the bodily or mental health of the one upon whom they are inflicted or toward whom they are directed, or be such as to destroy the objects of matrimony.

"A decree of divorce may not be granted on the uncorroborated declarations, confessions, or admissions of the parties to the case.

"The court in deciding the amount of alimony or in making a division of property in a divorce case will consider the age of the parties, their earning ability, the duration of and the conduct of each during the marriage, their station in life, the circumstances and necessities of each, the physical condition of each, the property owned by them and whether or not it was acquired by their joint efforts, and any other pertinent facts."

The court, in Hodges v. Hodges, 154 Neb. 178, 47 N. W. 2d 361, has also held that: "It is impossible to lay down any general rule as to the degree of corroboration required in a divorce action, as each case must be decided on its own facts and circumstances.

"Condonation is forgiveness for the past upon condition that the wrongs shall not be repeated. It is dependent upon future good conduct, and the repetition of the offense revives the wrong condoned.

"Conduct of a husband toward his wife which would not alone support a decree of divorce on the ground of extreme cruelty may, nevertheless, be sufficient to avoid a condonation extended to the husband by the wife for such cruelty.

· "One party to the marriage may condone the cruelty of the other but one claiming condonation must establish it by clear and satisfactory proof.

"In awarding the custody of minor children, the court looks to the best interests of such children, and those of tender age are usually awarded to the mother. Other considerations being equal, it is usual to award the custody of children to the innocent spouse.

"Custody of minor children awarded their mother in a divorce action will not be disturbed unless it is shown that the mother is an unfit person to have their custody, or that their best interests require such action."

In the light of such rules we have examined the record. In that connection, we find no satisfactory evidence corroborating defendant's testimony with relation to the facts alleged in his cross-petition, as required by section 42-335, R. R. S. 1943. Upon such basis we conclude that defendant was properly denied a decree of divorce, and also in the light of the foregoing rules, we conclude that defendant was properly denied the custody of the two younger boys. The custody of the two girls is not questioned, and there is no contention that the mother was not a fit and proper person to have custody of the children. As a matter of course, it is elementary that defendant had a legal obligation and the ability as well to support his minor children, and an allowance to plaintiff of $20 a week therefor was certainly not unreasonable.

We are confronted then with the question of whether or not plaintiff was entitled to a divorce, and whether or not the real estate was properly awarded to her. At the outset it will be noted defendant's position at the trial, as reflected in his testimony, was that there was no chance of reconciliation.

The record discloses that the parties were married June 30, 1930, at Dunlap, Iowa. · At that time plaintiff was employed by the State Highway Commission at Shenandoah, Iowa, earning $150 a month. They lived there for awhile, and plaintiff furnished their home.

They have resided in Omaha for the last 7 years, but they previously lived in numerous places, as far away as Portland, Oregon, where defendant repeatedly changed his employment. At time of trial, plaintiff was 49 years old and had been continuously employed since October 1948, as a cashier for Brandeis, earning $30 a week. Such employment became necessary in order to properly care for herself and the children. At time of trial defendant, a mechanic, 55 years old, was employed as such at the Mead Ordnance Plant, concededly earning $49 a week take-home pay. Their marital difficulties with regard to nonsupport and extreme cruelty began in June 1932, when defendant disappeared for several months, concealed his whereabouts, and left plaintiff with a 10-month old child and no means of support except her own labor and the assistance of relatives. Ultimately the parties were reunited, and again in 1937 defendant disappeared for several months, concealing his whereabouts from and leaving plaintiff in poor health, with four small children, and no means of support except her own labor and the assistance of relatives. They were again subsequently reunited, but over the years defendant has repeatedly, as alleged by plaintiff, used indecent and abusive language toward plaintiff and the children in the presence of the children, and has physically abused some of them, striking them with whatever instrument, including his foot, as was available at the moment. He struck the oldest boy on the right side of the head with such force as to injure him in such manner that the army would not retain him for service. In the words of such boy, who testified as a witness for plaintiff, the father "didn't treat any of us as human beings" and the general atmosphere of the home was "a hell on earth." The oldest daughter, testifying for plaintiff, also corroborated some of such evidence.

In September 1945, the parties moved into a home at 6047 South 40th Street in Omaha, paying rent therefor. However, in February 1946, plaintiff purchased the prop-

erty for $5,900, taking the title in her own name, where it has since remained. Her father loaned her $1,500 with which to make the down payment. As evidencing such loan, she executed a promissory note for $1,500 at 3 per cent, payable to her father on March 1, 1956, secured by second mortgage. Defendant signed the note following plaintiff's signature, and the mortgage was executed first by plaintiff and then by defendant as "her husband." It does not appear that the mortgage was ever filed of record, and no part of the principal was ever paid. On the back of the note appear the endorsement of two payments of interest, $45 each, for 1947 and 1948 respectively. The fact is, plaintiff's father subsequently waived any further payments, and returned the note and mortgage to plaintiff, making her a present of the amount represented therein. Plaintiff produced both the note and mortgage in open court, and they were received in evidence. There is approximately more than $3,900 still owing upon the first mortgage, payable in amounts of $38 to $42 a month, depending upon the amount of taxes assessed against the property. There is no competent evidence showing the value of the property at the time of trial. Over a period of more than 6 years, only about $500 has been paid on the principal. If defendant had paid it all, which apparently is not the fact, his interest in the property would be little enough to award in lieu of alimony for plaintiff. She purchased most of the furniture or it was given to her by relatives. During the marriage, plaintiff received a $300 inheritance from her mother's estate, and $1,500 from an aunt's estate, all of which she used to pay back borrowed money, family bills, and keep up the home.

There is competent evidence that since June 1952, defendant has purchased no groceries or food for the family, who ate their meals out of the home. He would buy enough to feed himself and prepared his own meals in the home. He produced, identified, and explained several checks written by him to grocers for sums of

$5.00 to $7.50 during July, August, and September, before plaintiff's divorce action was filed, in order to evidence that he did buy groceries for the family after June 1952. However, on cross-examination, defendant admitted that during such period his wife and children ate elsewhere, and he alone ate the groceries allegedly purchased by such checks.

In evidence adduced by defendant, he specifically or generally denied the charges made by plaintiff against him or undertook to favorably explain his conduct with respect thereto, the material part of which the trial court evidently concluded was not true. We sustain that conclusion.

For reasons heretofore stated, the judgment of the trial court should be and hereby is affirmed. All costs are taxed to defendant, including $150 allowed plaintiff for services of her attorney in this court.

AFFIRMED.

CARTER, J., participating on briefs.