PEARL L. KIDDER, APPELLEE, v. MILTON C. KIDDER, APPELLANT.

68 N. W. 2d 279

Filed February 4, 1955. No. 33599.

J. C. *Coupland* and *Julius D. Cronin*, for appellant.

*William B. Quigley, William M. Ely*, and *Samuel C. Ely*, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action for divorce by Pearl L. Kidder, plaintiff and appellee, against Milton C. Kidder, defendant and appellant. Trial was had to the court following which decree was rendered granting to plaintiff an absolute divorce; the custody of two minor children of the parties; $50 a month for the support of the children until the younger should attain the age of 18 years; permanent alimony in the amount of $30,000 payable in annual installments of $2,500 beginning March 1, 1954, with interest on delinquent installments; residence property in Mullen, Nebraska; certain described household goods; and an attorney's fee for her attorney in the amount of $750.

Following the rendition of decree the defendant filed a motion and a supplemental motion for new trial which motions were in due course overruled. From the decree and the order overruling these motions the defendant has appealed.

The assignments of error asserted as grounds for reversal are substantially (1) that the court erred in refusing to grant a new trial on the basis of newly discovered evidence; (2) that the findings and decree are contrary to the evidence; (3) that the findings and decree are contrary to law; and (4) that the alimony awarded is excessive.

Briefly stated the grounds for divorce are that the defendant has been guilty of cruelty practiced upon the plaintiff and children of the parties almost from the beginning of the marriage, which was in September 1918, down to and including February 13, 1953, and particularly on February 13, 1953.

The defendant generally denied all of the cruelty charged against him. He specially asserted in substance as a defense that cruelty of which he had been guilty, if any, prior to September 1951, had been condoned and not revived.

On this appeal he reasserts his defense and contends, as he did in the district court, that the testimony of plaintiff as to the act or acts charged against him as of February 13, 1953, have not been corroborated in consequence whereof a decree based thereon may not be upheld.

The plaintiff has in her testimony related a lengthy and sordid history of trouble and cruelty practiced upon her and upon the children of the parties by the defendant starting as she has pleaded in 1918 and ending with final separation in February 1953. The repetition of that history could serve no useful purpose. It ought to be said however that at least as to that phase of her pleaded cause of action relating to cruelty to children

as grounds for divorce there is evidence of probative value which evidence was corroborated.

From an examination of the record it becomes clear that in 1951 these parties were having difficulties in consequence of which on September 28, 1951, plaintiff instituted an action for divorce against the defendant in which she charged him with cruelty. Thereafter the parties became reconciled. The reconciliation was effected on the promise of defendant that he would not again be guilty of cruelties upon and toward the plaintiff. It is conceded that this reconciliation was so conditioned. That action was dismissed October 29, 1951.

There is no evidence of specific acts of cruelty practiced directly upon plaintiff thereafter until February 13, 1953. Plaintiff testified that on this date the defendant struck her with such force and violence that a large lump was caused to be raised on the side of her face which became discolored.

There were no witnesses to the incident but the evidence discloses that at least three witnesses saw the lump on the day plaintiff said that the blow was inflicted. They testified that plaintiff said that the lump resulted from striking by the defendant.

The defendant did not dispute the condition as described but his version was that plaintiff threatened to strike him with a hammer, whereupon he fell against her and she fell out of a jeep and in some manner received the injury.

If the testimony as to this incident was corroborated it was by the testimony of witnesses as to what they saw and what plaintiff told them on February 13, 1953. The defendant contends that this evidence is not corroborative of the evidence of plaintiff and that there is no other evidence having a corroborative character or quality and that therefore the requirements of statute as to corroboration have not been satisfied. See § 42-335, R. R. S. 1943.

On the question of corroboration this court has said:

"It is impossible to lay down a general rule as to the degree or amount of corroboration required in a divorce action, as each case must necessarily be decided upon its own facts and circumstances." Brown v. Brown, 146 Neb. 908, 22 N. W. 2d 148. See, also, Johnsen v. Johnsen, 144 Neb. 208, 12 N. W. 2d 837; Green v. Green, 148 Neb. 19, 26 N. W. 2d 299; Hodges v. Hodges, 154 Neb. 178, 47 N. W. 2d 361; Wakefield v. Wakefield, 157 Neb. 611, 61 N. W. 2d 208.

The case of Green v. Green, *supra,* appears to factually support the conclusion that the evidence of plaintiff in the case here has received sufficient corroboration to satisfy the statute and the decisions of this court interpreting and applying it. In the opinion there this court made the following observation and concluded that the evidence was sufficiently corroborated: "The condition of the child after the whipping, showing marks on her body, was testified to by the plaintiff's mother."

In the case at bar the condition of plaintiff after the striking showing the lump and its condition was testified to by competent witnesses.

Unless this court is prepared to depart from its general holdings and the particular holding in Green v. Green, *supra,* it must be said that the testimony as to the incident of February 13, 1953, has been corroborated agreeable to the statute.

The effect of this is to say that if the evidence of plaintiff as to the incident of February 13, 1953, as a whole, was sufficient to sustain a decree of divorce then no consideration of the question of condonation in September or October 1951 is required. In the light of the conditional reconciliation of 1951 and this evidence as to February 13, 1953, all acts of cruelty before September 1951, which were proved, became proper to be considered in the determining whether or not plaintiff was entitled to a decree of divorce. The appropriate rule is as follows: "Condonation is forgiveness for the past upon condition that the wrongs shall not be re-

peated. It is dependent upon future good conduct, and a repetition of the offense revives the wrong condoned; * * *." Anderson v. Anderson, 89 Neb. 570, 131 N. W. 907, Ann. Cas. 1912C 1. See, also, Wetenkamp v. Wetenkamp, 140 Neb. 392, 299 N. W. 491; Eicher v. Eicher, 148 Neb. 173, 26 N. W. 2d 808; Wakefield v. Wakefield, *supra.*

Another contention of defendant is that the plaintiff condoned the act of February 13, 1953. He contends that this is true because she remained in the family home for 3 days thereafter as his wife and that this amounted to condonation.

The burden of proof of condonation of cruelty as a defense in a divorce action is upon the party claiming it. McConnell v. McConnell, 37 Neb. 57, 55 N. W. 292; Trevett v. Trevett, 151 Neb. 517, 38 N. W. 2d 332.

We do not think the defendant has in this connection shown to the degree required by law that there was condonation by the plaintiff. We are unwilling to adopt the view that a wife forfeits her right to successfully maintain an action for divorce on the ground of cruelty by the act alone of remaining in the household of herself and husband for a period of 3 days.

In the light of these observations it is concluded that the decree is neither contrary to the evidence nor to the law. It is the further conclusion that the plaintiff was and is entitled to an absolute divorce from the defendant, unless the court erred in its refusal to grant a new trial on the ground of newly discovered evidence. We do not think it erred in this respect for the reasons which follow.

The incident to which the claimed newly discovered evidence referred was not pleaded or relied upon at the trial as a ground for divorce. It occurred on February 16, 1953. On that day the parties and two of their children went to Mullen in a jeep driven by the defendant. As he was driving into Mullen the plaintiff informed defendant that she was not going to return home, that

is, that she was separating from him. He had no previous knowlege of her intention. On receipt of this information the defendant suddenly turned off on a side street or road, whereupon plaintiff and the two children jumped out of the jeep. The defendant drove up a short distance, turned around, and started back. Witnesses for plaintiff gave testimony the effect of which was to convey an impression that the defendant made an effort to run the plaintiff down with the jeep. The defendant denied any such intention or purpose. The purported newly discovered evidence was proffered testimony of witnesses which would counteract the testimony of plaintiff's witnesses as to this incident.

As we view it any such evidence had no value in proof or disproof of any issue in the case. If the testimony of plaintiff's witnesses be accepted as true, it proved nothing more than infuriation of defendant at the plaintiff after her purpose and the factual basis for her action for divorce were complete. The court did not err in refusing to grant a new trial.

The remaining question is that of alimony. The rule generally applicable in this respect is the following: "In determining the question of alimony or division of property as between the parties the court will consider the respective ages of the parties to the marriage; their earning ability; the duration of the marriage; the conduct of each party during the marriage; their station in life, including the social standing, comforts, and luxuries of life which the wife would probably have enjoyed; the circumstances and necessities of each; their health and physical condition; and their financial circumstances as shown by the property they owned at the time of divorce, its value at that time, its income-producing capacity, if any, whether accumulated or acquired before or after the marriage, the manner in which it was acquired, and the contributions each has made thereto. From these elements and all other relevant facts and circumstances, the court will determine

the rights of the parties and make an award that is equitable and just." Chambers v. Chambers, 155 Neb. 160, 51 N. W. 2d 310.

It is reasonable to say that these parties made an approximately equal contribution in property and effort from the beginning to end of this marriage. They both worked hard and they lived frugally. There is no substantial contention by either that this was not true. They accumulated a substantial amount of land and other property. At the time of trial there had been an accumulation of 1,922.4 acres of deeded land and leases on 737 acres of school land. There were more than 179 head of cattle but how many more is not known. The only evidence in this respect came from the defendant and he testified that he went into the winter of 1952-1953 with 179 head but at the time of trial he said there were in addition some calves. His testimony was descriptive of 67 or 68. Of these there were 26 coming yearlings weighing about 400 pounds each, 45 or 46 heavy cows or cows with calves, and 5 bulls. The remainder appear to have been cows or cows with calves and 2-year-old heifers. The only description of these or the ones mentioned above as to quality is that some were not of high quality but that most of them were of Hereford stock. He gave no testimony as to the value of any of them. Other witnesses testified as to values of the cattle by classes but there is no evidence as to the number in any class except as to 5 bulls and 26 coming yearlings. The evidence reasonably supports a value of one of the bulls of $300 and the remaining four of $800 or a total of $1,100. The evidence supports a value of the coming yearlings of $1,690.

As to those not numbered the evidence of plaintiff is that cows with calves were worth from $150 to $155 each, cows without calves $140 each, and 2-year-old heifers $90 each. The testimony on behalf of defendant was that cows of the better classification with calves were worth $140 to $145 each, cows of the inferior class

without calves were worth $100 to $110 each, and 2-year-old heifers were worth $90 each. On this evidence the plaintiff estimates the value of the cattle without calves to be $23,280. In his brief defendant appears to concede a valuation of from $19,000 to $21,000.

The evidence of plaintiff as to the value of the land was $19 to $20 an acre for the deeded land. At $19 an acre the total value would be $36,525.60. Included in this value was the value of the school land leases to which no specific value was attached. The value fixed by evidence of the defendant was $12.50 an acre for the deeded land and $5 an acre for the school land leases. This amounts to a total valuation of $27,715.

The evidence discloses that the house in Mullen was purchased for $500 and improvements costing about $1,800 were added. The value thereof appears to be about $2,300.

There appears to have been other personal property, life insurance, and money totaling in value about $8,881.

It should be mentioned also that there was a mortgage indebtedness of $2,500.

Thus the total net value of the entire property accumulated by the parties supported by the evidence of plaintiff is approximately $68,486.60, and as supported by the evidence of defendant is approximately $57,396.

As it appears to us the trial court made an attempt to make a substantially equal and even division of the property between the parties. In the light of the disparity in the valuations of real estate and of cattle and the reasonable conclusions which it is apparent may be drawn therefrom and which obviously were drawn we accept the determination of the court in fixing permanent alimony as fair and proper.

The decree of the district court should be and it is affirmed.

A fee in the amount of $500 is allowed to plaintiff for the services of her attorneys in this court.

AFFIRMED.