BILLIE COWAN, APPELLANT, v. LEWIS H. COWAN, APPELLEE.

69 N.W. 2d 300

Filed March 11, 1955. No. 33631.

Heaton & Heaton, for appellant.

Neighbors & Danielson, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action for divorce brought by the plaintiff wife on the grounds of cruelty, including repeated physical abuse. Defendant resisted plaintiff's petition and by cross-petition sought a divorce on the grounds of cruelty, including physical abuse, abandonment, and failure to properly maintain the home.

Trial was had resulting in a denial of a divorce on the petition of the plaintiff, the granting of a divorce on the cross-petition of defendant, the award of custody of children to the defendant, and an award of alimony.

Plaintiff appeals, asserting error in denying the divorce on her petition and in granting it on defendant's petition, in awarding the custody of the children to the defendant, and in granting insufficient alimony.

Defendant controverts those assignments of error and by cross-appeal alleges error in that the decree does not award permanent and exclusive custody of the children to him, and contending that the permanent alimony awarded is excessive.

We reverse the judgment of the trial court and remand with directions.

The cause is here for trial de novo on the record.

The parties hereto met in May of 1948, and were married July 18, 1948. Plaintiff was at that time a high school graduate, an experienced secretary, and

was 24 years of age. Defendant was at that time a physician and surgeon, 31 years of age. He completed some of his training after the marriage. A girl and a boy were born to the union within 2 years after the marriage.

During the period involved, the parties lived at Bayard in Morrill County, at Pueblo, Colorado, and later at Scottsbluff, where the defendant practiced his profession and homes were maintained.

The trial was a long and contentious one. The record is littered with testimony as to trivial and inconsequential matters. There is much evidence on both sides that does not meet the requirements of section 42-335, R. R. S. 1943, as to corroboration.

There is conflicting evidence as to quality of language used by the plaintiff to which we will refer later herein.

There is evidence on both sides as to conditions in the home as to cleanliness and uncleanliness, neatness and lack of neatness, efficiency in use of time and lack of it, and orderliness in the doing of work and lack of it. Some of the witnesses give details, others content themselves with conclusions. This may be explained in part by a lack of a common standard by which the witnesses judged the situations to which they referred. There was an apparent conflict between the meticulous standards of cleanliness, neatness, and orderliness of the physician and surgeon with those of a housewife largely doing all of the home work, caring for two babies in the diaper stage, and attempting to meet the social requirements of a wife of a professional man.

There is evidence as to neglect of feeding habits, clothing, and cleanliness of the children. It is noted that all the evidence found in the record shows they are normally healthy children.

There is evidence of the use of intoxicants socially by both parties and the results that followed.

There is evidence of suspicions of the plaintiff directed at the defendant because of his presence on occasion in eating places and elsewhere with ladies with whom he worked professionally. The unfavorable inferences which plaintiff drew from these occurrences disappeared with the evidence which was produced at the trial.

There is evidence of an indiscretion of the plaintiff at a dinner dance in November 1951, which caused the defendant to leave the party and go home alone, and required the plaintiff to be taken home by others at the dinner party. The unfavorable inferences which defendant drew from that occurrence likewise disappear in the light of the evidence received. The facts of that matter were readily available to the defendant at that time and since. Nevertheless the parties agree that thereafter sexual relations between them ceased. Defendant rejected plaintiff's desires to renew that relationship. Defendant produced evidence that he sought a solution of the difficulties of the parties, and yet it appears that he was unwilling to renew that relationship with the element of forgiving and forgetting that it would have involved.

It is noted that many of the matters about which defendant complains arose in the home under living and working conditions which he provided; or occurred at times and places where defendant escorted plaintiff, among people with whom he caused her to associate, and under contributing factors in which he shared.

We pass a detailed discussion of these matters because of evidence of physical cruelty of the defendant applied to the person of the plaintiff which, as to two events, is amply corroborated by witnesses for both parties and largely admitted by the defendant.

The first of these batteries occurred about November 1950. The initial cause seems to have been the physical method used by plaintiff in disciplining one of the children. The result was a beating of the plaintiff by the

defendant. Only the extent of the battery is in dispute. Defendant explains this by the statement that he "inhibited" the plaintiff, later explaining that he meant by that term the use of physical means to make her treat the child in a different fashion; that he threatened to "impede her physically" so that she would not touch the child again; that "I would use physical means to make her leave" the child alone; that "I would protect that child from physical violence inflicted by his mother"; and protect it from "onslaughts" and keep her· away from the child.

The other battery occurred the evening before Thanksgiving 1952. An argument started over what should be purchased for a Christmas present for defendant's office nurse. Defendant says he objected to disciplinary methods used by the plaintiff at mealtime with the boy. Defendant interfered. Defendant asserts plaintiff hit him over the head with a skillet containing food. Plaintiff says she hit him with a plate after he choked her. Defendant received head wounds. Defendant administered a battery to the plaintiff resulting in black eyes, and other visible bruises. It was a brutal beating. The next day defendant insisted that plaintiff bake a pie and attend a Thanksgiving dinner given by professional associates and their families. She did so, with her bruises visible for all to see. The same evening they attended a card party with his professional associates.

Thereafter, following family discussions, on December 8, 1952, plaintiff took the children and went to her father's home in Georgia. Plaintiff says she went to spend the Christmas Holidays. Defendant says she left, stating that she would never return. However it is noted in a letter which defendant wrote to plaintiff in Georgia, defendant says "We were both in complete and full agreement that any separation should be at least two or three months in duration." In any event defendant furnished the means for her to go and took

plaintiff and the children to the train when they left.

While plaintiff and the children were absent, defendant, on contract, purchased and moved the home into a commodious country house. He did not advise plaintiff of that fact.

On March 28, 1953, plaintiff and the children, uninvited and unannounced, returned to Scottsbluff. Defendant accepted the children and gave them a home in the new residence. He denied the plaintiff admission to the home. This action then followed.

In Wetenkamp v. Wetenkamp, 140 Neb. 392, 299 N. W. 491, we held: "Condonation may be applied to acts of cruelty, but it stands upon a somewhat different basis than cohabitation after knowledge of adultery, for cruelty as a ground of divorce is a continuing course of conduct which grievously wounds the mental feelings and destroys the peace of mind so that it nullifies the legitimate ends of matrimony. The effort to endure unkind treatment as long as possible is commendable, but the repetition of the same cruel and harsh conduct, showing a resumption of the former course of conduct, thereby revokes condonation, and the original cause of divorce is revived." This was approved in Hodges v. Hodges, 154 Neb. 178, 47 N. W. 2d 361.

This physical abuse and cruelty by the defendant of the plaintiff transcends and outweighs the other alleged acts of the parties. It justifies an award of a divorce to plaintiff rather than to the defendant. The trial court erred in denying a divorce to the plaintiff.

The judgment of the trial court is reversed as to that question and the cause remanded with directions to enter a decree granting a divorce to the plaintiff and denying it to the defendant.

The next question is that of the custody of the two children.

Plaintiff alleged that she was a fit, proper, and suitable person to have the care, custody, and control of the two children. This was put in issue by defendant's gen-

eral denial. Although praying for permanent and exclusive custody of the children, defendant in his cross-petition made no allegations as to his own fitness to have the care, custody, and control of the children.

The trial court found generally for the defendant and against the plaintiff. The court further found that it would be for the best interests of the children if defendant were granted their custody and that the defendant is a fit and proper person to have their custody. There was no finding that plaintiff was not a fit and proper person to have their custody, save such as is involved in the general finding for defendant. However, any inferences against the plaintiff from that general finding are negatived by the fact that the trial court awarded plaintiff custody of the children on Saturdays from 9 a. m. to 7 p. m. and during the month of June of each year.

The statutory provision as to custody is: "Upon pronouncing a sentence or decree of nullity of a marriage and also upon decreeing a divorce, whether from the bonds of matrimony or from bed and board, the court may make such further decree as it shall deem just and proper concerning the care, custody, and maintenance of the minor children of the parties, and may determine with which of the parents the children or any of them shall remain." § 42-311, R. R. S. 1943.

The power granted by section 42-311, R. R. S. 1943, is subject to the continuing power of the court over that subject matter as set out in section 42-312, R. R. S. 1943.

The rule is that in awarding the custody of minor children, the court is to consider the best interests of the child, with due regard for the superior rights of fit, proper, and suitable parents. Children of tender age are usually awarded to the mother unless it is shown that she is unsuitable or unfit to have such custody, or through some peculiar circumstance is unable to furnish a proper home. See, Bath v. Bath, 150 Neb. 591, 35 N.

W. 2d 509; Hodges v. Hodges, *supra;* Campbell v. Campbell, 156 Neb. 155, 55 N. W. 2d 347; Killip v. Killip, 156 Neb. 573, 57 N. W. 2d 147; Wakefield v. Wakefield, 157 Neb. 611, 61 N. W. 2d 208. In Lichtenberg v. Lichtenberg, 154 Neb. 278, 47 N. W. 2d 575, we held: "The care, custody, and control of a child of tender years is almost uniformly awarded to the mother if she is a fit and suitable person to have its custody."

A reason for the rule awarding the custody of young children to the mother is well illustrated by the situation shown in this case from the routine established after the defendant secured custody of the children and prior to the trial.

Defendant is a busy practitioner of his profession. He is up early in the morning. After a breakfast with the children, he is away from the home; he may or may not be home for the noon meal; and he is home for the evening meal and quite often again absent in the early evening on professional duties. He is with the children on Sunday mornings, takes them to Sunday School, and spends time with them on that day. He is an outdoor man and spends time hunting with adult companions. The meals are prepared by a housekeeper. She supervises the children, their clothes, their play, recreation, and rest periods, and, if need be, corrects their conduct and exercises discipline. Although this decree places the legal care, custody, and control in the defendant, subject to plaintiff's custody as above set out, the fact remains that the actual care, custody, and control, hour by hour and day by day, is largely in the housekeeper selected by defendant. In the less than 9-month period between the separation and the trial, there were two different salaried housekeepers in the home caring for these children. The result is that the children are denied the loving care and affection of a mother that our rule contemplates shall be preserved for them if it may properly be done.

There is evidence here that plaintiff is "high strung"

and emotionally unstable. It is argued that because of that she is not fit to care for the children. It appears by defendant's witnesses that the children are normal youngsters with the exception that the girl evidenced shyness when with adults with whom she was not well acquainted. We take it that that is not an unusual characteristic for a child.

There is credible evidence that on one occasion in midyear 1952 the plaintiff attempted suicide. That event, as well as most of the other emotionally disturbed events, occurred when there was dissention between the plaintiff and the defendant and the home was being pushed apart. A considerate understanding of the factual situation concurring with those events should be had.

There is credible evidence that plaintiff at times used improper language in the presence of the children and others, and that the children had used similar language on occasion. However, defendant's witness, a doctor, testified that when plaintiff "had a few drinks" her inhibitions disappeared and that plaintiff's use of questionable language usually occurred during the time that she had been drinking intoxicants. There is also evidence of the defendant's witness that on occasion when defendant told plaintiff to cease drinking that she did so. It is to be noted that substantially all the times when these matters occurred, plaintiff had been drinking intoxicants either with the defendant alone or with the defendant and others with whom he caused her to associate.

There is little evidence of emotional disturbance in the months that intervened between the separation and the trial. For aught that appears in the record, plaintiff lived an exemplary life after she was relieved of the stress and the association of living with the defendant. It affirmatively appears that plaintiff on Wednesday evenings and Sundays, since the separation, has attended religious services at the church of her choice. There is also evidence during the stay in Georgia in 1952-1953

that plaintiff and the children attended Sunday School and plaintiff taught a Sunday School class and sang in the choir.

Defendant relies on our decision in Swanson v. Swanson, 137 Neb. 699, 290 N. W. 908. It is obvious that the factual situation there and here is in some respects comparable. There are also differences. There it was determined that the defendant was entitled to the divorce. Here it is determined that the plaintiff is entitled to a divorce. There two of the children were much older than the children involved here. There the emotional instability of the plaintiff appears to have been somewhat permanent and much greater in degree than here. There the emotional instability did not improve with medical treatment; here that instability disappeared in large part when the contributing factors were removed. There the unfavorable "attitude" of the mother was beginning to show in the lives of the children. Here such a conclusion is not justified. There is evidence as to the use of language by the children on two or three occasions comparable to some shown to have been used by the plaintiff. No other source of the language appears. In the light of the record hereinbefore summarized, we do not deem that fact a sufficient reason to deny the mother of the care and custody of these children. Problems of child custody are always difficult. Each case must be decided on its own facts and circumstances and the weighing and balancing of conflicting factors. The ideal solution is seldom found. We do not consider the Swanson case controlling here.

We conclude that the care, custody, and control of these children should be awarded to the plaintiff in accord with the rule hereinbefore stated. The judgment of the trial court as to that question is reversed and remanded with directions to enter a decree awarding the custody of the children to the plaintiff with rights of visitation and custody in the defendant comparable to those awarded the plaintiff by the trial court.

In determining times of visitation and temporary custody of the defendant, due regard should be given to the time and times available to the defendant because of his professional duties. If the parties cannot agree on that matter, the trial court should take evidence and determine it. The decree in respect to custody is to be subject, of course, to the continuing revisory power of the court.

We come next to the question of child support and alimony.

The evidence shows that defendant is paying a house-keeper $150 a month and furnishing food and quarters to her and a minor son. The housekeeper's duties are in a large part connected with the children. In addition to the above amount, defendant has been furnishing food, clothing, etc. for the children. Defendant has set the standard of living he desires for his children. His income, referred to later herein, appears to justify it. Accordingly, we find there should be awarded to the plaintiff the sum of $150 a month for the support of the two children of the parties, payable monthly, said payments to continue until the children reach legal age, marry, or are no longer in the legal custody of the plaintiff. The trial court is directed to make such an award to the plaintiff. This award is subject, of course, to the power of the court to revise or alter the same as provided by section 42-312, R. R. S. 1943.

The trial court awarded all property, real and personal, to the defendant, including all household furnishings, equipment, and personal belongings. As to that the decree is to be modified so as to award to the plaintiff a suitable amount of household furnishings, including furniture, rugs, electrical appliances, and other proper items to enable her to establish a suitable home for the care and custody of the children. The personal effects of the children, including clothing, playthings, etc. are likewise to be awarded to the plaintiff. If the parties cannot agree on these matters, then the court should take

evidence and make an award requiring delivery of such properties to the plaintiff.

The trial court awarded plaintiff permanent alimony in the sum of $15,000 payable at the rate of $150 a month.

Plaintiff here asserts that the award is too little, while defendant by cross-appeal asserts it is too much.

The amount and value of the property is generally stated but the parties disagree as to what the record shows as to total value.

This much is clear. When the parties were married, neither had anything of material wealth save an automobile owned by the defendant. They acquired from defendant's professional earnings a quite adequate amount of household goods. Defendant has his guns, his dogs, and his boat for recreational purposes. In addition, the defendant has a substantial investment in professional equipment. There is reference to some savings and life insurance. In addition, there is a substantial equity in the home purchased at a price of $21,000. It becomes important to point out that all of the property was accumulated during the marriage relationship.

We find no basis for establishing a relationship between the values of property enumerated and the alimony award made by the court.

The parties stipulated that for the year 1950 defendant's gross income was $9,610.16 with a net subject to income tax of $1,755.68, and a net after income tax payment of $1,688.68. For 1951, the gross was $8,475, the net subject to income tax was $3,265.91, and a net after income tax payment of $2,909.91. For 1952, the gross was $22,931.90, the net subject to income tax was $12,882.02, and a net after income tax payment of $10,580.24. There is also a stipulated net income of $11,506.24 for the first 11½ months of 1953.

It is obvious that any substantial award of child support and alimony must be paid in large part from future earnings of the defendant.

We were presented with a similar situation in Prosser v. Prosser, 156 Neb. 629, 57 N. W. 2d 173. There the wife was awarded substantial parts of the accumulated property. Here the wife was awarded no part of such property. There the wife by her earnings had contributed materially to the education and established earning capacity of the husband. Here the wife contributed nothing in dollars but did contribute her work and services in maintaining the home and raising the children during the period of quite limited income of the defendant and during the period of his internship and advanced professional training in Colorado after the marriage. There, as here, after the husband had secured his education and established a substantial income in the work for which he was trained, the wife was put aside. There, as here, the wife had a right to expect that in the years to come she would share in the benefits derived from the training and ability which she helped to bring about. There, as here, that sharing is denied. There we stated this rule which we follow here: "The amount of alimony to be granted a wife is not to be determined alone from the property possessed by the husband. Many other factors enter into the determination such as the husband's age, health, earning capacity, future prospects, and social standing."

Weighing these things in the light of the contribution and conduct of the parties during the marriage, we conclude that the award of permanent alimony should be $28,800 instead of the $15,000 fixed by the trial court, payable at the rate of $150 a month in the time and manner fixed in the decree, delinquent payments, if any, to bear interest at the legal rate. The decree to be entered here on remand shall so provide.

An award of $750 to be taxed as costs is made as attorneys' fees to the plaintiff, to be in addition to attorneys' fees and allowances heretofore granted. All costs here and in the trial court are taxed to the defendant.

The judgment of the trial court is reversed and the cause is remanded with directions to enter a decree in accord with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.