MYRTLE PESTEL, APPELLANT, v. BERNHARD PESTEL, APPELLEE.

73 N. W. 2d 689

Filed December 16, 1955. No. 33799.

*Thomas L. Grady,* for appellant.

*Duetsch & Jewell,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Appellant sought a divorce from appellee because, as she alleged, he on August 13, 1951, deserted her, had continued such desertion thereafter, and wholly failed to perform any of the obligations of the marriage contract after he deserted appellant. She asked for suitable allowances including permanent alimony. Appellee denied the charges of misconduct made against him by appellant and asserted that on or about August 13, 1951, she ordered appellee to leave and move from the house then occupied by the parties, the title to which was in appellant; that appellee did remove therefrom; and that the separation of the parties was the result of the repeated demands of appellant that appellee leave her and live apart from her. Appellee also alleged the proceedings had in and the result of a prior case to which he was defendant and appellant was plaintiff. Appellee asked that the petition of appellant be denied. The reply of the appellant to the answer of appellee was in essence a denial.

The district court found that jurisdictional requisites existed; that all issues involved should be resolved in favor of appellant and against appellee; that an absolute divorce should be granted appellant; that the parties should retain the property, real and personal, in their respective possession; and that appellant should be awarded as permanent alimony from appellee the sum of $7,500, compensation for her attorney in a designated amount, and costs. A judgment was rendered in harmony with the findings. The motion of appellee for a

new trial and the motion of appellant for a new trial of the issue as to permanent alimony only were denied. This appeal is from the action of the court adjudging the amount of permanent alimony appellant shall have from appellee. He did not appeal. He has not taken a cross-appeal but has expressly waived his right to do so.

The single problem presented to this court by the pending appeal is the amount that should be awarded to appellant as permanent alimony. The amount given her by the finding and judgment of the trial court is considered by her as very inadequate. Appellee claims that it is grossly exorbitant.

In Parker v. Parker, 155 Neb. 325, 51 N. W. 2d 753, it is said: "The court in deciding the amount of alimony or in making a division of property in a divorce case will consider the ages of the parties, their earning ability, the duration of and the conduct of each during the marriage, their station in life, the circumstances and necessities of each, the physical condition of each, the property owned by them, and whether or not it was acquired by their joint efforts, and any other pertinent facts." See, also, Kidder v. Kidder, 159 Neb. 666, 68 N. W. 2d 279; Cowan v. Cowan, 160 Neb. 74, 69 N. W. 2d 300.

The parties to this controversy were married September 15, 1917. They were at that time and have since been residents of Nebraska and residents of Stanton County since February 1926. Appellant is 58 and appellee is 63 years of age. They occupied and operated a rented farm in Cuming County during the 9-year period from their marriage until February 1926. They bought a farm of 160 acres in Stanton County on August 3, 1925, moved on it in February 1926, and continued to occupy and operate it until the spring of 1947. The purchase price was $24,800 and it was satisfied about March 1, 1926, with $10,000 given appellee by his father in 1921 and about $2,000 accumulation thereon, $5,000 borrowed from the father of appellee and secured by mortgage

on the land, $2,000 loaned to appellee by his brother, and the balance of $5,800 was money appellant and appellee had made and saved by the use of the land. Appellee realized $14,000 from gifts by his father in his lifetime and by the terms of the will of his father. The last payment on the mortgage placed on the land was in 1941 or 1942. The title to the land was taken and since has been in the name of appellee.

Appellee estimated at the time of marriage he had between $800 and $1,000 and 6 brood sows. He spent the money for horses and farm equipment. Appellant had 3 cows, a calf, several dozens of chickens, canned food sufficient for their use until a crop was produced, and furniture so that they had only to buy a bed.

The parties during the period of about 20 years from the time they moved on the 160-acre farm they had purchased were industrious, thrifty, prudent, and successful. They worked hard, they were saving, and they accumulated a considerable amount of property and funds. Appellant did the housework. She became the mother of two sons and cared for and raised them. She helped with the farm work, assisted appellee in stacking hay, picking corn, and in doing other farm work. She milked from 5 to 10 cows, and she raised and cared for chickens to the extent of as many as 900. She fed hogs and did other chores. It is not claimed that she had any help with the household duties. It is affirmatively conceded that she did her part. The sole source of income of the parties during this time was from the 160-acre farm.

In the year 1946 appellant with the approval of appellee bought 95 acres of land located about a mile from the 160 acres described above. She paid the purchase price of $8,500 by using a substantial part of what she had inherited from her family. This was supplemented with her earnings and savings from 40 acres of land she had inherited in 1938 and from other sources. Appellee and appellant moved on the 95-acre farm in the spring of 1947 with the mutual intention of decreasing their duties

and labors, improving the farm, and making it their home during their declining years. Appellant continued after they moved to this farm to raise and care for large numbers of chickens and hogs. She realized as much as $2,000 from hogs in a single year. She also got a considerable production of grain from the tilled part of the land. This place was improved with a modern house, appropriate modern appliances, utensils, furnishings, and equipment at an expenditure by appellant of about $9,000. The record justifies a finding that she invested all of her inheritance from her family in purchasing and improving this place and equipping and furnishing the house except one-tenth of 160 acres of land in South Dakota and one-tenth of 320 acres of land in Texas of small and uncertain value. The evidence is not clear and definite as to the exact value of the inheritance she received from her family but it is sufficient to permit an acceptance of her sworn estimate that it was more than $12,000. The improvements made on the 95-acre farm were with the knowledge and approval and, to a considerable extent, with the participation of appellee. He testified he expended about $4,000 exclusive of his labor in improving the fences and building new ones of woven wire and in improving the barn, granary, and other outbuildings. There is dispute in the evidence as to the amount he expended for these purposes but it is conceded that it was more than $2,000. It was paid from the joint account of appellant and appellee.

Appellee left the home of the parties on the 95-acre farm on August 13, 1951. He has since made his home with his son Clarence on the 160-acre farm. There is evidence that the parties to this cause had many disagreements and much unpleasantness for a considerable time before the separation. There is evidence that this situation existed in 1950 and that they infrequently spoke to each other during the 6 months immediately before appellee left appellant.

The property in the name and possession of appellant as shown by the evidence produced by her consists of the 95-acre farm and the personal property thereon, a one-tenth interest in 160 acres of land in South Dakota, a one-tenth interest in 320 acres of land in Texas, a nominal amount of cash, and a 1950 Ford automobile. Her health is not good. She has and is crippled by chronic arthritis. Ordinary exercise such as doing housework affects her legs so that they will not function. She also suffers from an abnormal heart. The 95 acres of land in her name have a value of not more than $15,000.

Appellee claims the property he has is the 160-acre farm in his name which he rents to his son Clarence for an annual rental of $1,000, the amount of the taxes thereon, and Clarence furnishes him a home; United States E Bonds of the maturity value of $4,500; bank account of $2,316.59; a 1941 Ford automobile; and a few items of small tools. The 160 acres of land in the name of appellee have a value of not less than $27,000.

The banking business of the parties was done in the name of appellee until the year 1938. Thereafter he had a bank account in one or more banks and appellant thereafter had an individual bank account. They also had a joint bank account. Appellee withdrew from the joint account the sum of $3,250 on August 2, 1951, which was 11 days before the separation of the parties, and $55 on August 16 or 17, 1951, which was the balance of the account. In September 1953 appellee had bank balances of about $7,000. He says this has been reduced to less than $2,500. His explanation of the disposition of the difference is equivocal, incomplete, and unsatisfactory.

Appellee testified at the trial of the first divorce case referred to above, Pestel v. Pestel, 158 Neb. 611, 64 N. W. 2d 299, supplemental opinion, 159 Neb. 56, 65 N. W. 2d 233, that he had not at any time given property of any kind except some machinery to his son Clarence. It appears in the testimony of appellee and

otherwise in this case that in 1947 or 1948 he gave his son Robert $5,000, that his intention was to treat the sons alike, and that he had given his son Clarence at least $5,000. Appellee was probably then referring to the farm equipment and machinery and the interest in livestock he had given Clarence. Appellee gave Clarence $4,250 in February 1951, and at a later date that year $750. The method of doing this was that appellee deposited money in a bank in the name of Clarence, without his knowledge, and delivered the deposit tickets issued by the bank to him. There was no conversation or understanding about it and appellee got nothing from Clarence on account thereof. There was no situation or happening that affected Clarence that explained this generosity. Clarence had property, was successful in his engagements and business, and he had no pressing obligation. Appellee later, probably August 15, 1951, gave Clarence a check for $1,000. He gave his father nothing on account thereof. About May 1951 appellee had $6,000 maturity value of United States E Bonds reissued to his son Robert as the payee thereof and gave him the bonds. Robert gave his father nothing on account of his receipt of the bonds. The record is silent as to any negotiations or arrangement concerning them. Robert owned property, was operating a going and apparently successful business, and it is not claimed that the transfer of the bonds to him was done to permit him to respond to any present necessity.

The $6,000 appellee gave Clarence in 1951 and the bonds of $6,000 which he gave Robert in 1951 as above stated should, for the purpose of a division of property between the parties to this case, be considered and treated as property owned by appellee. In this view of the case and considering the circumstances shown by the record, the allowance of permanent alimony of $7,500 made to appellant and required to be paid her by appellee is inadequate and it should be modified and changed as hereafter stated. It is found by this

court that the allowance of permanent alimony to appellant should be and is fixed at the sum of $12,000.

It is therefore adjudged that appellant have and recover of and from appellee the sum of $12,000 as permanent alimony without interest or execution for 120 days from the date of the filing of the mandate in the district court, that appellant have and recover of and from appellee the sum of $350 as compensation to her counsel for services in this court to be taxed as costs, and that the costs in this court should be and they are taxed to appellee.

The judgment of the district court as modified should be and it is affirmed.

AFFIRMED AS MODIFIED.